UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

76 ROUTE 6 HOLDINGS INC.,

Plaintiff,

-against-

TOWN OF YORKTOWN, NEW YORK, TOWN BOARD OF THE TOWN OF YORKTOWN, PLANNING BOARD OF THE TOWN OF YORKTOWN, ZONING BOARD OF APPEALS OF THE TOWN OF YORKTOWN, EDWARD A. LACHTERMAN, SERGIO ESPOSITO, LUCIANA C. HAUGHWOUT, PATRICK MURPHY, AND SUSAN SIEGEL, individually and as members of the Town Board, and JOHN AND JANE DOEs 1–20,

Defendants.

Case No. 25-cv-0693 (KMK)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

SAVAD CHURGIN
Dennis E. A. Lynch
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 729-5744

SICHENZIA ROSS FERENCE CARMEL LLP
Nicholas R. Caputo
Wynee Ngo
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

**PRELIMINARY STATEMENT** ........ 1

**STATEMENT OF FACTS** ........ 4

**LEGAL STANDARD** ........ 8

**ARGUMENT** ........ 10

**POINT I** ........ 11

PLAINTIFF HAS SUFFICIENTLY PLED ITS 42 § 1983, N.Y.S. CONSTITUTIONAL DUE PROCESS, AND EQUAL PROTECTION CLAIMS ........ 11

A. Plaintiff Has Stated Claims for Violation of Equal Protection Under the U.S. and NYS Constitution ........ 11

B. Plaintiff Has Sufficiently Pled its Due Process Claim ........ 15

i. Plaintiff Has a Demonstrated Property Interest ........ 15

ii. Defendants Arbitrarily and Irrationally Infringed on Plaintiff's Interest ........ 20

**POINT II** ........ 22

PLAINTIFF HAS SUFFICIENTLY PLED ITS § 1983 FIRST AMENDMENT RETALIATION CLAIM ........ 22

**POINT III** ........ 23

PLAINTIFF HAS SUFFICIENTLY PLED ITS § 1985 CONSPIRACY CLAIM ........ 23

**POINT IV** ........ 24

PLAINTIFF'S DECLARATORY JUDGMENT AND N.Y. CPLR ART. 78 CLAIM ARE NOT DUPLICATIVE ........ 24

**POINT V** ........ 26

DISMISSAL OF ANY OF THE CLAIMS IN THE COMPLAINT SHOULD BE WITHOUT PREJUDICE WITH THE RIGHT TO REPLEAD ........ 26

**CONCLUSION** ........ 27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 8,9

*Bernstein v. City of New York*,
No. 06 Civ. 895, 2007 WL 1573910 (S.D.N.Y. May 24, 2007) ... 11

*Bloomingburg Jewish Educ. Center v. Vill. of Bloomingburg, N.Y.*,
111 F. Supp. 3d 459 (S.D.N.Y. 2015) ... 25

*Brady v. Town of Colchester*,
863 F.2d 205 (2d Cir. 1988) ... 13, 16, 17, 20

*Casale v. Metro Transp. Auth.*,
No. 05 Civ. 4232 (MBM), 2005 WL 3466405 (S.D.N.Y. Dec. 19, 2005) ... 25

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ... 9

*Cine SK8, Inc. v. Town of Henrietta*,
507 F.3d 778 (2d Cir. 2007) ... 15

*DiMartile v. Hochul*,
80 F.4th 443 (2d Cir. 2023) ... 24

*Doe v. New York Univ.*.,
537 F.Supp. 3d 483 (S.D.N.Y. 2021) ... 24

*Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002) ... 22

*E. Moriches Prop. Owners Ass'n. v. Planning Bd. of Town of Brookhaven*,
66 A.D.3d 895 (2d Dep't 2009) ... 17

*Elam Sand & Gravel Corp. v. Town of West Bloomfield*,
140 A.D.3d 1670 (2016) ... 15

*Ferran v. Town of Nassau*,
471 F.3d 363 (2d Cir. 2006) ... 20

*Figgie Intern, Inc. v. Town of Huntington*,
203 A.D.2d 416 (1994) ... 16

*Gagliardi v. Village of Pawling*,
18 F.3d 188 (2d Cir. 1994)....................22

*Garofalo v. City of New York*,
No. 22-CV-7620, 2023 WL 3792514 (E.D.N.Y. June 2, 2023)....................25

*Gershowitz v. Planning Board of the Town of Brookhaven*,
52 N.Y.2d 763 (1980)....................18

*Goel v. Bunge*,
820 F.3d 554 (2d Cir. 2016)....................4, 9

*In re WEOK Broadcasting v. Planning Board*,
79 N.Y.2d 373 (1992)....................21

*Jamil v. Vill. of Scarsdale Planning Bd.*,
24 A.D.3d 552 (2d Dep't 2005)....................17, 18

*Kiryas Joel Alliance v. Village of Kiryas Joel*,
No. 11-3982, 2011 WL 5995075 (S.D.N.Y. Nov. 29, 2011), aff'd
495 F. App'x 183 (2d Cir. 2012)....................23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*,
797 F.3d 160 (2d Cir. 2015)....................26

*Matter of Alscot Inv. Corp. v. Incorporated Vil. of Rockville Ctr.*,
64 N.Y.2d 921 (1985)....................16

*Matter of Faymor Dev. Co. v. Board of Stds. & Appeals of City of N.Y.*,
45 N.Y.2d 560 (1978)....................16

*McEachin v. McGuinnis*,
357 F3d 197 (2d Cir. 2004)....................9

*New Hope Fam. Servs. Inc. v. Poole*,
966 F.3d 145 (2d Cir. 2020)....................8

*Nicholson v. Incorporated Village of Garden City*,
112 A.D.3d 893 (2nd Dept. 2013)....................14

*Olech v. Village of Willowbrook*,
160 F.3d 386 (7th Cir. 1887)....................12

*Peck Slip Assocs, LLC v. City Council of City of N.Y.*,
26 A.D.3d 209 (3rd Dept. 2006)....................14

*Penn Cent. Transp. Co. v. New York City*,
438 U.S. 104 (1978)....................14

*Pokoik v. Silsdorf*,
40 N.Y.2d 769 (1976) .......... 16

*Roberson v. Mullins*,
29 F.3d 132 (4th Cir. 1994) .......... 10

*Schubert v. City of Rye*,
775 F.Supp.2d 689 (S.D.N.Y. 2011) .......... 10

*Scott v. Greenville County*,
716 F.2d 1409 (4th Cir. 1983) .......... 10

*Soundview Associates v. Town of Riverhead*,
725 F.Supp.2d 320 (2010) .......... 11, 19, 20

*State Emps. Bargaining Agent Coal v. Rowland*,
494 F.3d 71 (2d Cir. 2007) .......... 10, 11

*Town of Orangetown v. Magee*,
88 N.Y.2d 41 (1996) .......... 15, 19

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000) .......... 11, 12

*Walz v. Town of Smithtown*,
46 F.3d 162, 168 (2d Cir. 1995) .......... 19

*Webb v. Goord*,
340 F.3d 105 (2d Cir. 2003) .......... 23

*Yeshiva Chofetz Chaim Radin v. Village of New Hempstead*,
98 F. Supp. 2d 347 (S.D.N.Y. 2000) .......... 10

**<u>Statutes/Municipal Codes</u>**

28 U.S.C. § 1331 .......... 25

28 U.S.C. § 1367(a) .......... 25

Fed. R. Civ. P. 57 .......... 24

N.Y. Town Law § 267-a .......... 18

Town of Yorktown Code § 15-3 .......... 6, 13, 17

Town of Yorktown Code § 300-194(B) .......... 13

Plaintiff 76 Route 6 Holdings Inc., by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss the Complaint (the "Motion") of Defendants the Town of Yorktown (the "Town"), the Town Board of the Town of Yorktown (the "Town Board"), the Planning Board of the Town of Yorktown (the "Planning Board"), the Zoning Board of Appeals of the Town of Yorktown (the "Zoning Board"), Edward A. Lachterman, Sergio Esposito, Luciana C. Haughwout, Patrick Murphy, and Susan Siegal (collectively, the "Defendants").

## PRELIMINARY STATEMENT[1]

This case arises from a calculated campaign by the Defendants to obstruct and ultimately extinguish Plaintiff's constitutional rights in connection with the development of a Recycling Facility on its Property. Plaintiff submitted an as-of-right Land-Use Application to construct the facility. As in other communities, the construction of the Recycling Facility was not popular, but the Town Building Inspector found that the Application could proceed as-of-right and did not require any discretionary land use approvals. Yet given the backdrop of vehement vocal opposition by Town voters, and the Defendants harboring an unlawful animus against Plaintiff arising from a prior litigation and public criticism from Plaintiff's affiliate and agents, Defendants launched a series of arbitrary retaliatory actions to prevent Plaintiff's Project.

The Town's unlawful conduct was immediately manifest after the Town's Building Inspector issued his Determination that the Building could be constructed as-of-right as proposed in the Application and did not raise any objection to the proposed location of the Building. Thereafter, rather than appeal the Determination, Town officials attempted to coerce the Building

[1] All defined terms set forth herein shall have the same meaning ascribed to them in the Complaint.

Inspector to reverse his Determination to prevent Plaintiff from pursuing the as-of-right use that was permitted under the zoning code (the "Zoning Code"). The Building Inspector refused to reverse his Determination. Thereafter, the Planning Board, which lacked statutory authority to interpret the Town's Zoning Code, tried to reverse the Building Inspector's as-of-right Determination by referring that Determination to the Zoning Board, even though no appeal had been filed from the Determination. Predictably, the Zoning Board conducted a sham proceeding, in which Plaintiff's land use counsel was not permitted to call the Building Inspector as a witness or create any meaningful record. As a result of those unlawful proceedings by the Zoning Board, the Town required Plaintiff to file for an area variance--and not the as-of-right Application approval as determined earlier by the Building Inspector.

In summary, the Town ignored a lawful determination of the only person authorized to administer the Building Code, the Building Inspector, manipulated zoning interpretations, unlawfully delayed proceedings, and interfered with Plaintiff's other rights. Then, when it became apparent that Plaintiff was prepared to relocate the proposed Building (not situated even in the larger setback area) such that its Application could unquestionably be granted "as-of-right," the Town Board rushed to completely remove Plaintiff's intended use from the Zoning Code. The zoning amendment was not a neutral nor prospective lawful land-use change; rather, it was a targeted strike, confirmed by public admissions made by Town Board members as well as the conspicuous timing of this zoning amendment itself. The Town Board only amended the Zoning Code to outlaw Plaintiff's specific facility. These facts referenced in Plaintiff's Complaint are not conjecture but based on admissions by the Defendants. As Defendants' own Motion admits, there were no other recycling facilities in the Town during this entire time, a conclusive concession that this zoning amendment was not a neutral land-use local law. Equally damning to the Town Board

is the fact that before it voted to prohibit recycling facilities from Plaintiff's zoning district, the Town Board referred the matter to the Planning Board to make a recommendation as to whether to completely eliminate recycling facilities in the Town. Notwithstanding the Planning Board's response that it would not be proper to eliminate all recycling facilities (suggesting definitional changes to the Zoning Code), the Town Board went ahead a week later and voted to amend the Zoning Code to eliminate all recycling facilities from the Zoning Code. Parenthetically, the notion that a town in suburban New York would eliminate all recycling facilities in the year 2024 is itself mind boggling.

Accordingly, Plaintiff now seeks redress for these constitutional violations, including, *inter alia*, due process deprivations, denial of equal protection as the zoning amendment was targeted to Plaintiff as a "class of one" property owner and was done with an unlawful animus, retaliation for Plaintiff's First Amendment rights, and other violations of law. Each of Plaintiff's claims is supported by detailed factual allegations and palpably more than plausible legal theories that preclude dismissal at this early stage. Defendants' Motion literally seeks to turn Federal practice on its proverbial jurisprudential head by ignoring long-established procedures that all properly-pled facts are assumed to be true by submitting a declaration and numerous exhibits and by making countless references to those extraneous documents in an effort to manufacture its own set of facts outside the four corners of the Complaint. Even worse, Defendants try to dispute Plaintiff's allegations as if this were a trial and not a pre-answer motion to dismiss.

Defendants cling to a deceitful façade of claimed concern for the environment, traffic control, and noise regulation (all of which should not be before this Court on the Motion), while weaponizing municipal authority to relentlessly extinguish Plaintiff's civil rights. Though Defendants may cloak their actions in seemingly-benevolent motives, their true intent is

discriminatory and unlawful. The civil rights claims asserted in this action compel this Court to look beyond Defendants' pretextual postering and scrutinize their actual intent. In making this determination, the Court must consider the historical context of the dispute, the sequence of events that led to Defendants' actions, the departures from standard procedures, including the targeting of the Application, and the extent to which Defendants' conduct has produced a discriminatory and otherwise unlawful result regarding Plaintiff's Application.

## STATEMENT OF FACTS[2]

Plaintiff owns the Property situated within the Town's I-1 (Light Industrial) zoning district, where recycling facilities were expressly permitted as-of-right at the time it purchased the Property and submitted its Application. Plaintiff acquired this Property on July 28, 2023, with the reasonable investment backed expectation that it could develop the Recycling Facility consistent with the Town's then existing Zoning Code. Compl. ¶¶ 1, 30–31.

---

[2] As a threshold matter, the entire "Factual Background" of Defendants' brief, together with the Declaration should be stricken as Defendants refer to and dispute facts outside Plaintiff's Complaint. Def. Br., pp. 2–10. Defendants misleadingly state in fn. 1 of its brief that the facts set forth were drawn from the Complaint unless otherwise stated, but nearly all of the "facts" either contain no citation to the Complaint or include a citation to the Declaration of David H. Chen, Defendants' counsel, and accompanying exhibits. Defendants try to justify its submission of voluminous extraneous exhibits based on the misguided notion that the Court purportedly can take judicial notice of them. Apart from the fact that Defendants do not set forth any evidentiary foundation that would qualify all such documents, Defendants' submission is palpably improper in that even if a court could take judicial notice of a document, a defendant "may not rely on statements in the documents for the truth of the matter asserted." *Goel v. Bunge*, 820 F.3d 554 (2d Cir. 2016). The principle that courts must accept allegations in the complaint as true is basic procedure, and Defendants are merely trying to create a subterfuge to distract from those allegations.

One of the more glaring examples of Defendants improperly disputing Plaintiff's allegations is its attempt to convince this Court that the Building Inspector did not issue the Determination that the 100-foot setback proposed by Plaintiff was zoning compliant. The Complaint alleges at ¶ 23 that the Determination was made on January 11, 2023, so for purposes of this Motion, that is a fact. However, in terms of the truth, the Building Inspector testified at the May 23, 2024 Zoning Board hearing that he had already determined that only a 100-foot setback was required. The Building Inspector even confirmed his Determination in his March 6, 2024 memorandum. Compl. ¶¶49-50. Defendant's counsel is obligated to correct this and other material misstatements of fact.

Plaintiff's plan to develop the Recycling Facility unfortunately has, as its background, a contentious relation between the Town and Plaintiff's affiliate, AAA Carting. AAA Carting previously engaged in public criticism and litigation against the Town regarding municipal waste contracts, further intensifying hostility between Plaintiff's principals and Town officials. *Id.* ¶¶ 21–26. Notably, one of AAA Carting's employees, who also represented Plaintiff in its Application before the Town and in subsequent proceedings, publicly criticized the Town on social media for the Town's handling of the waste contracts. *Id.* ¶¶ 25–26.

On December 7, 2023, Plaintiff submitted its "as-of-right" Application seeking site plan approval for a 40,000-square-foot Building. *Id.* ¶¶ 32–33. Consistent with the Town Code, Plaintiff proposed a 100-foot setback on the easterly-property line. The Building Inspector reviewed Plaintiff's Application and issued a formal Determination on January 11, 2024, confirming that this Building could be constructed as-of-right and did not raise any objection to the proposed location of the Building. *Id.* ¶¶ 34–35. The Planning Board did not appeal the Building Inspector's Determination to the Zoning Board within the 30-day period required by the Town Code (assuming the Planning Board had standing or was otherwise entitled to file any such appeal to the Zoning Board). *Id.* ¶ 36. Instead, Town officials attempted to coerce the Building Inspector to reverse his Determination that permitted Plaintiff's as-of-right Application to proceed. *Id.* ¶ 38. Specifically, Town officials sought to influence the Building Inspector to require a larger setback on the easterly property line that would cause Plaintiff to obtain a variance or take other actions that would delay expeditious approval. *Id.* ¶¶ 37–38. The Building Inspector refused to do so. *Id.*

After the Building Inspector refused to reverse his Determination, the Planning Board placed the Application on its February 12, 2024 meeting agenda without notifying Plaintiff or its

counsel. *Id*. ¶ 42. During this meeting, the Planning Board falsely claimed that, despite the Building Inspector's Determination, the Setback Proposal was not zoning compliant for an "as of-right" approval and "determined" that a variance was necessary." *Id.* ¶¶ 43–45. Notwithstanding said assertion, the Planning Board had no lawful authority to determine whether the Project was zoning compliant, as the Building Inspector is the only Town officer vested with this authority pursuant to Town of Yorktown Code § 15-3. *Id*. ¶ 46.

On March 6, 2024, the Building Inspector issued another memorandum to the Planning Board, in which he re-reviewed the Application, at the Planning Board's improper request, and refused to reverse his Determination. *Id.* ¶¶ 49–50. Despite the Building Inspector's re-review, instead of appealing through proper channels, the Planning Board referred the matter to the Zoning Board, which conducted a hearing on May 23, 2024. *Id*. ¶¶ 51–52. At the May 23, 2024 hearing, Plaintiff's counsel was denied the opportunity to examine the Building Inspector or build a complete record. More importantly, the Zoning Board gave no deference to the Building Inspector's Determination and lawful interpretation of the Zoning Code. *Id*. ¶ 53.[3] Ultimately, the Zoning Board refused to issue a written decision and instead instructed the Building Inspector to sign its Void Determination contrary to standard procedures, despite the fact that the Building Inspector is not a member of the Zoning Board and had no authority to act on behalf of the Zoning Board. Compl. ¶¶ 54–57.

In mitigation of its damages, on July 15, 2024, Plaintiff presented the Planning Board an Alternative Layout that proposed moving the Building and therefore complied with even the

---

[3] Defendants improperly offered the minutes of the May 23, 2024 Zoning Board meeting. The Building Inspector confirmed that he had made the Determination. At the "hearing", the Zoning Board had before it the only person authorized to administer the Zoning Code, the Building Inspector, who they knew had made the Determination, but they did not bother asking him the basis for it. Drawing all reasonable conclusions in favor of Plaintiff, under lawful Town procedure, the Zoning Board's "hearing" was not a hearing at all.

200-foot setback and simultaneously completed its Variance Application for a minor area variance, either of which would have entitled Plaintiff to proceed with its development. *Id.* ¶¶ 58–62. Plaintiff's counsel requested that the Application be added to the August 8, 2024 Zoning Board meeting agenda. *Id.* ¶ 61.

However, on that same day, the Town Board articulated its intent to propose a zoning amendment to eliminate Recycling Facilities as a permitted use in the I-1 zoning district. *Id.* ¶¶ 68–70. The proposed local law history and public statements made during the August 8, 2024 meeting, and subsequent meetings, made it clear that the proposed local law changes were aimed specifically at blocking Plaintiff's Project. *Id.* ¶¶ 63, 69–70, 77–78. At this Meeting, the Town Board effectively communicated that this change of zoning was necessary to prohibit Plaintiff from operating its Recycling Facility and admitted, to the cheers of the large public crowd providing unlawful political pressure, that the change of zoning was targeted specifically towards Plaintiffs Project. *Id.* ¶¶ 70.

Thereafter, throughout August and September 2024, the Town deliberately delayed Plaintiff's Application. *Id.* ¶¶ 73–77, 79. Internal communications, public comments, and records from meetings reveal an intentional effort to withhold land use determinations for Plaintiff's Project until the new zoning amendment could be adopted. *Id.* ¶¶ 75–80.[4]

On September 17, 2024, the Town Supervisor even went so far as to write to the Town Board specifically about the Project: "I do not feel that the new proposed transfer station is what was intended in the law. Our hearing today is to remove it as an allowed use so it could be looked at later down the line." *Id.* ¶ 80. In response to a request from the Town Board about whether the

[4] Trying again to contradict Plaintiff's allegations, Defendants falsely state that it was Plaintiff who adjourned its own Application. The Complaint states clearly that the Planning and Zoning Boards both refused to put the Application on its meeting agenda while the change to zoning played out. *Id.*. ¶¶ 73-76, 79.

Recycling Facility should be eliminated from the Zoning Code, the Planning Board held a meeting on September 23, 2024, and recommended that Recycling Facilities should not be completely removed as a permitted use and there were better alternatives from a planning perspective. Compl. ¶¶ 81-84. Despite that recommendation, the Town Board nevertheless issued a resolution on October 1, 2024 (which turned out to be defective) to eliminate the as-of-right Recycling Facility, and again, on December 10, 2024 (in an effort to cure manifest SEQRA violations committed at the October 1st meeting) abolishing Recycling Facilities from the light industrial district. Compl. ¶¶ 81, 85–87, 89–93.

Municipal public admissions, including a public blog post by Defendant Town Board Member Susan Siegel, confirmed that the zoning amendment eliminating all Recycling Facilities from an as-of-right use on Plaintiff's Property rendered Plaintiff's Application nugatory. *Id.* ¶ 88. The local law amendment eliminated Plaintiff's rights and ability to develop and operate the Recycling Facility, despite its substantial investment, planning, and reliance on existing laws. *Id.* ¶¶ 95, 110. On January 23, 2025, Plaintiff filed the instant action.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *New Hope Fam. Servs. Inc. v. Poole*, 966 F.3d 145, 160 (2d Cir. 2020). To survive, the complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). This standard does not require the plaintiff to allege detailed factual allegations but requires more than mere "labels or conclusions' or a "formulaic recitation of the elements of a

cause of action." *Id*. In deciding whether a complaint states a plausible claim for relief, the court only has to be able to draw a reasonable interference that the defendant is liable for the misconduct alleged. *Id.* Where a party is alleging civil rights violations under 42 U.S.C. § 1983, courts should apply this standard with "special solicitude" toward the party asserting the constitutional violations. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Further, under Rule 12(b)(6), the court is constrained to consider the allegations of the complaint itself. As the Circuit held in *Goel v. Bunge*, "[g]enerally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." 820 F.3d 554, 559 (2d Cir. 2016) (quotations omitted). To the extent a defendant relies on declarations and other material outside the pleadings on the motion, the Court must exclude those materials or convert the motion as one for summary judgment and allow discovery. *Id; see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Even if a defendant were permitted to introduce documents (*e.g.*, matters for which the court can take judicial notice), it is wholly inappropriate for that party to cherry pick self-serving statements to dispute the allegations as the allegations in the complaint are accepted true and a "contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding - one featuring a bespoke factual record, tailor-made to suit the needs of defendants."[5] *Goel*, 820 F.3d at 554 (2d Cir. 2016).

[5] Plaintiff objected to Defendants' improper and inappropriate interjection of new "facts" in its response to the Defendants' Pre-Motion Letter (Dkt. Nos. 27 and 28). Yet again, Defendants seek to introduce these purported "facts" in its Motion to improperly challenge the allegations in the Complaint. To the extent this Court will consider Defendants' extraneous material, the Motion would need to be converted to summary judgment and Plaintiff would be entitled to discovery prior to the briefing.

# ARGUMENT

Defendants begin by asserting absolute and legislative immunity on behalf of the individual Defendants. This argument lacks merit. First, common law immunity for officials does not extend to federal civil rights claims. *Yeshiva Chofetz Chaim Radin v. Village of New Hempstead*, 98 F. Supp. 2d 347, 347 (S.D.N.Y. 2000). Second, both absolute and legislative immunity govern civil liability for public servants when acting only in their *legislative* capacity. *Schubert v. City of Rye*, 775 F.Supp.2d 689, 699 (S.D.N.Y. 2011). "Courts apply a functional test to determine whether an act is legislative, which focuses not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Id.* at 701 (internal citations omitted). Here, Defendants have wholly failed to address Plaintiff's allegations as to the individual Defendants' actions which fall outside of legitimate legislative activity.

It is well settled that immunity does not extend to executive actions and non-legislative enforcement responsibilities to which absolute legislative immunity does not attach. *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir. 1983) (finding that legislative immunity did not extend to local officials who assumed non-legislative roles in dealing with the plaintiff's permit application and the officials' actions were executive in nature when reviewing the plaintiff's specific building permit application). Legislative immunity applies only to actions that are both (i) substantively legislative, *i.e.*, acts that involve policy making; and (ii) procedurally legislative, *i.e.*, passed by means of established legislative procedures. *State Emps. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 89–90 (2d Cir. 2007); *Roberson v. Mullins*, 29 F.3d 132, 134 n.3 (4th Cir. 1994) (noting that the mere act of voting is not dispositive in determining whether a local governmental body's actions are legislative). The Complaint contains numerous allegations concerning the individual Defendants, including actions and statements that clearly were not

legislative in nature. *See, e.g.*, Compl. ¶¶ 37–38, 70, 77–80, 88. As the individual Defendants' actions in addressing Plaintiff's Application could be viewed as enforcement based and executive in nature, the individual Defendants should not be entitled to immunity.

Further, while personal immunity is recognized, this does not extend to "illegal acts . . . which are obviously not in aid of legislative activity and for which legislators can claim no immunity." *Id.*, 716 F.2d at 1422. Here, Plaintiff alleges the Town officials unlawfully attempted to compel the Building Inspector to reverse his Determination to require a larger setback, an illegal act that is obviously not in the aid of legislative activity. In addition, the allegations that the Town Board members targeted this particular Project and changed the Zoning Code to outlaw this use (a violation of Plaintiff's equal protection rights) means that their role was not legislative.

At this stage, dismissal of the individual Defendants on immunity grounds is premature. *See State Emps. Bargaining Agent Coal.*, 494 F.3d at 90; *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 345 (2010); *Bernstein v. City of New York*, No. 06 Civ. 895, 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007). Thus, there is no basis for dismissing the individual Defendants at this stage based on their claims of immunity.

## POINT I

## PLAINTIFF HAS SUFFICIENTLY PLED ITS 42 § 1983, N.Y.S. CONSTITUTIONAL DUE PROCESS, AND EQUAL PROTECTION CLAIMS

### A. Plaintiff Has Stated Claims for Violation of Equal Protection Under the U.S. and NYS Constitutions.

In the landmark case of *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court held in a land-use case brought by a property owner similar to the one here that the equal protection clause prohibits municipalities from treating a property owner as a "class of one"

wherein the plaintiff "alleges that [it] has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." The mere allegation that the municipality in *Willowbrook* required that the plaintiff provide a 33-foot easement in connection with a land use application instead of a 15-foot easement that was generally required in the town was sufficient to state a cause of action under the equal protection clause of the Fourteenth Amendment. This was true even without consideration of the "village's subjective motivation," which was unnecessary for purposes of the motion.

In a similar vein, the Seventh Circuit in the *Willowbrook* case held that allegations that the actions by the Village were motivated by animus and ill will against the plaintiff were also sufficient to set forth an equal protection claim (a finding the Supreme Court determined was not necessary to reach). *Olech v. Village of Willowbrook*, 160 F.3d 386 (7th Cir. 1998).

In the present case, with the realization that the Building Inspector's Determination allowed for an "as-of-right" application to construct the Recycling Facility, certain Defendants and/or their predecessors in interest initiated an unlawful course of conduct to force the Application from being considered as an "as-of-right" that would have resulted in the subsequent Town approval. (Compl.¶ 38). Town officials attempted to compel the Building Inspector to reverse his Determination so that a larger setback was required on the easterly property line that would result in Plaintiff seeking a variance and not permit the Recycling Facility to be expeditiously approved "as-of-right." For any member of the Town Board to be involved with a land-use application that was in front of the Building Inspector and/or Planning Board at this early stage demonstrates, in the light most favorable to Plaintiff, that the Town Board did not want Plaintiff's Application to be approved (which, as a zoning-compliant application, the Town could not have stopped). After the Building Inspector refused to do so, the Town embarked on a months-long campaign wherein

Town officials and boards attempted to nullify the Determination (which was a final determination that the Town never appealed) by having the Planning Board and the Zoning Board create procedures basically to nullify the Determination. The law is clear that the Building Inspector is exclusively authorized to interpret and administer the Zoning Code. *See* Town of Yorktown Town Code, § 15-3 ("The Building Inspector shall administer and enforce all the provisions of the Zoning Ordinance"); *see also id.*, § 300-194(B) ("The provisions of this chapter shall be enforced by the Building Inspector."). The Town sought to subvert that lawful process.

Then, after enduring months of pretextual delay by the Planning and Zoning Boards, when Plaintiff indicated it would move the location of the Building to avoid a dispute over the setback, the Town Board suddenly gave notice of its intent to amend the Zoning Code specifically to eliminate one specific use—Recycling Facilities. This is true even though, as Defendants state in its brief, no other recycling facility had ever been constructed before this one. The attempts by Town Officials to compel the Building Inspector to reverse the Determination is by itself sufficient to demonstrate an equal protection violation under both the "class of one" and "animus/ill will" standards. When you couple that attempt with the admissions from Town Board members that the zoning change was being done as a result of Plaintiff's singular Application, those allegations set forth an equal protection claim that satisfies the *Willowbrook* standard as regulating a "class of one." In fact, this case presents an even more compelling showing than the *Willowbrook* case, in which the Supreme Court sustained the pleading. *See also Brady v. Town of Colchester*, 863 F.2d 205, 215 (2d Cir. 1988) (holding that plaintiff sustained its burden to oppose summary judgment on its equal protection claim of discriminatory intent and selective enforcement of zoning laws).

Relatedly, courts often scrutinize unconstitutional reverse spot zoning where a municipality singles out a property, such as Plaintiff's, to change the zoning from other similarly-

situated property in the municipality for less favorable treatment inconsistent with a well-considered land-use plan. *Nicholson v. Incorporated Village of Garden City*, 112 A.D.3d 893, 895 (2nd Dept. 2013); *see generally Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 132 (1978). Here, the Town did not conduct a comprehensive zoning plan, but made a single amendment of the Zoning Code to eliminate one particular use, recycling facilities, solely because the Town wanted to stop Plaintiff's Project, and it only initiated the local law amendment when it became clear (after the Alternative Layout was submitted) that the Town could no longer advance even the pretext that a variance were required as the Application, with the new Building location, was an as-of-right one that would have to be approved.

There is nothing in the record that the Town found Recycling Facilities particularly pernicious and, in fact, Defendants admit in their brief, that no recycling facilities were built in the twelve years that they were permitted as of right. All of the discussions at the two Town Board meetings were about stopping Plaintiff's Project, and the Town Board members made specific admissions that they were opposed to Plaintiff's Project and that the purpose of the amendment to the Zoning Code was to outlaw this Project. The Town Board referred the matter to the Planning Board, which is the one Town board that had insight into recycling facilities from a land-use perspective, and remarkably, the Planning Board stated at the September 23, 2024 meeting that it was opposed to eliminating recycling facilities all together. However, just eight days later, in spite of that, the Town Board outlawed Plaintiff's use anyway in violation of Plaintiff's Equal Protection rights. Thus, not only was the proposed local law amendment to eliminate Plaintiff's use not part of any well-considered Town comprehensive land use plan, but it was contrary to the existing Town's comprehensive land use plan. This is a classic case of unconstitutional reverse spot zoning. *Peck Slip Assocs, LLC v. City Council of City of N.Y.*, 26 A.D.3d 209, 210 (3rd Dept. 2006).

**B. Plaintiff has Sufficiently Pled its Due Process Claims.**

In the land-use context, 42 U.S.C. § 1983 protects against municipal actions that violate a property owner's rights to due process when (i) the property owner has a valid property interest in the action or benefit sought; and (ii) the defendants infringed on that property right in an arbitrary or irrational manner. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007); *see also Town of Orangetown v. Magee*, 88 N.Y.2d 41, 47 (1996). Defendants assert that Plaintiff lacks a vested property interest and mischaracterize Plaintiff's interest as merely speculative as the Building Inspector's Determination did not create a vested property interest. However, Defendants' Motion wholly ignores Plaintiff's well-pleaded allegations demonstrating its vested rights under the special-facts exception under well-established New York land use law. [6]

**(i) Plaintiff Has a Demonstrated Property Interest.**

Contrary to Defendants' bald assertion, Courts have long held that vested rights may arise where a property owner was in "full compliance with the requirements at the time of the application, such that proper action upon the permit would have given [the property owner] time to acquire a vested right . . . and [where there's a showing of] extensive delays indicative of bad faith . . ., unjustifiable actions by the municipal officials . . . or abuse of administrative procedures." *See Elam Sand & Gravel Corp. v. Town of West Bloomfield*, 140 A.D.3d 1670, 1671 (4th Dept. 2016) (internal citations omitted) (finding plaintiff stated a cause of action for applying the special

[6] Defendants' attempt to refute Plaintiff's claim of vested rights is based upon the incorrect conclusion that Plaintiff purportedly obtained vested rights based solely upon "incurring substantial expenses" *See* Defendant Brief, p. 13. However, Plaintiff does not base its vested rights claim based on "substantial costs and expenses" alone, but upon the outrageously arbitrary conduct of Defendants that qualifies Plaintiff's vested rights claim under the alternative "special facts exception" land use doctrine under New York Law.

facts exception by alleging that the town, town board, and planning board acted in bad faith in intentionally delaying the plaintiff's application in order to enact a new zoning code); *see also Figgie Intern, Inc. v. Town of Huntington*, 203 A.D.2d 416, 418 (1994). Examples of bad faith may include "unjustifiable actions" or "abuse of administrative procedures." *Pokoik v. Silsdorf*, 40 N.Y.2d 769, 773 (1976); *see also Matter of Alscot Inv. Corp. v. Incorporated Vil. of Rockville Ctr.*, 64 N.Y.2d 921, 922 (1985). The Court of Appeals later extended the special facts exception to cases involving mere *negligent* delay. *See Matter of Faymor Dev. Co. v. Board of Stds. & Appeals of City of N.Y.*, 45 N.Y.2d 560, 565 (1978).[7]

Defendants caused Plaintiff to face months of shifting, obstructionist tactics, including, *inter alia*, (i) Defendants' efforts to compel the Building Inspector to change his Determination; (ii) their efforts to repeal, void, and annul the Determination; (iii) the Planning Board's improper referral of the matter to the Zoning Board; (iv) the deprivation of Plaintiff's counsel's rights to examine the Building Inspector at a public hearing and to present a complete record; and (v) the Zoning Board's disregard for the Building Inspector's final administrative Determination, and instruction to the Building Inspector to sign and memorialize their Void Determination, all to manipulate the process and procedure solely to delay consideration of Plaintiff's Application. When Plaintiff made efforts to mitigate damages, including proposing to move the Building, which would eliminate doubt that the Project qualified as an as-of-right use, Defendants then undertook efforts to amend the Zoning Code. In *Brady*, the Second Circuit reversed the grant of summary judgment to the municipality when it was "very likely" the plaintiff would have been able to use

---

[7] The determination of what constitutes a property right for purposes of claims of its deprivation under the U.S. Constitution is determined by the law of the applicable state, here New York. *See Brady*, 863 F.2d at 215 (2d Cir. 1988) (applying Connecticut law to the issue of what constitutes a property right for a property located in Connecticut). As such, since New York law recognizes the well-established special facts exception to the law of vested rights, it is relevant to all of the due process claims.

the property for the intended purpose "but for the alleged improper conduct of the appellees." *Brady*, 863, F.2d at 213.

Plaintiff's submission fully complied with the Town's Zoning Code at the time of its Application. Despite the finality of the Building Inspector's Determination, the Planning Board—without authority—unilaterally and unlawfully "determined" that a 200-foot setback applied, and thus that a variance was required. As cited above, fundamentally that was outrageously arbitrary as the Building Inspector has the exclusive authority to interpret the Zoning Code. *Brady*, 863 F.2d at 215–216. In the land-use context, the Town's actions against Plaintiff were "conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." *Natale v Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999).[8]

Subsequent attempts by the Planning Board to usurp this Building Inspector function were done without due process, including notice to Plaintiff, and in contravention of the principle that planning boards lack jurisdiction to interpret zoning laws. *See E. Moriches Prop. Owners Ass'n. v. Planning Bd. of Town of Brookhaven*, 66 A.D.3d 895, 897 (2d Dep't 2009) ("[A] town planning

---

[8] Defendants cite to § 300-201(a) of the Zoning Code to distract from the Determination by suggesting that the Planning Board was permitted to refer the matter to the Zoning Board for an interpretation. That argument is flawed for several reasons. First, the Building Inspector had already made a determination, and the Building Inspector has the exclusive authority to administer the Zoning Code. Town Code, § 15-3. The Building Inspector never asked for any interpretation as he made it. Because the Determination was never appealed, it was a final binding determination, and, thus, there was no "question" to be referred to the Zoning Board. Second, as stated above, the Planning Board had no authority to interpret the Zoning Code. Despite that fact, the Planning Board "opined" that the larger setback was required (an issue that was not before it, nor could it be). Simply put, there was no authority and no reason for the Planning Board to refer the matter to the Zoning Board given the final Determination. *See Jamil v. Vill. of Scarsdale Planning Bd.*, 24 A.D.3d 552, 554 (2d Dep't 2005) (holding that "Planning Board was without authority to deny the approvals sought by [an applicant] based upon a contrary interpretation of the zoning ordinance" which differed from the interpretation rendered by the Building Inspector).

board is not authorized to interpret the provisions of the local zoning law."); *Jamil v. Vill. of Scarsdale Planning Bd.*, 24 A.D.3d 552, 554 (2d Dep't 2005) (holding that "Planning Board was without authority to deny the approvals sought . . . based upon a contrary interpretation of the zoning ordinance" which differed from the interpretation rendered by the Building Inspector); *Gershowitz v. Planning Board of the Town of Brookhaven*, 52 N.Y.2d 763, 765 (1980).

Further, the Planning Board's "determination," was not legally sufficient to trigger Zoning Board jurisdiction, yet the Planning Board *sua sponte* requested the Zoning Board make a determination regarding the setback. *See* Compl. ¶ 51; N.Y. Town Law § 267-a ([u]ness otherwise provided by local law or ordinance, the jurisdiction of the board of appeals shall be appellate only and shall be limited to hearing and deciding appeals from and reviewing any order, requirement, decision, interpretation, or determination made by the administrative official charged with the enforcement of any ordinance or local law adopted pursuant to this article").

When not viewed in isolation, the Town has demonstrated by its own collective conduct, for purposes of this Motion, that there was orchestration and coordination to defeat Plaintiff's Application. Among the many relevant facts, the fact that Town officials attempted to pressure the Building Inspector to reverse his determination, months before any proceedings before the Town Board had taken place, shows that the Town was interfering with the Application, which was entirely a land use issue at that time. Then, months later, when it became clear that Plaintiff would alter its plans to move the Building to again have an "as-of-right" use, the Town Board suddenly scheduled a public meeting to consider a change of the Zoning Code solely to eliminate one specific use (Recycling Facilities) that Plaintiff sought.

Once the Planning and Zoning Boards learned of the Town Board's intent to outlaw the use, Plaintiff's Application was off the agenda for both Boards, effectively trying to end Plaintiff's

"clear entitlement" of receiving approval of its Application for its "as-of-right" use. *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995); *see also Town of Orangetown v. Magee*, 88 N.Y.2d 41 (1996) (recognizing that plaintiff "unquestionably would have received the limited future authorizations necessary to complete the project"). These facts fall squarely within the special facts exception. Defendants' failure to even address the special facts doctrine—despite clear factual allegations supporting it—renders their Motion deficient. Plaintiff submitted their Application as early as December of 2023, and but for Defendants' extensive bad faith delays, Plaintiff's Project would have been deemed approved had the Town Board not abolished the use by amending the Zoning Code in December 2024.[9] This amendment, passed only after Plaintiff had submitted its Application, was explicitly acknowledged by Town officials as intended to block Plaintiff's Project. Despite and because of Defendants' bad faith delays, under the "special facts exception" Plaintiff acquired a vested right for an as-of-right use on its Property--before the Zoning Code was amended. *See Soundview Associates v. Town of Riverhead*, 725 F.Supp.2d 320 (E.D.N.Y. 2010) (finding that the plaintiff's allegations that the town and its administrative arm acted in bad faith by delaying its application for a building permit while zoning law was changed were sufficient to allege that the New York special facts exception would preclude application of the amended zoning ordinance). Defendants' infringement of Plaintiff's property interest was unjustified, clearly done in bad faith, and an abuse of administrative process.

[9] The Town Board tried to rush the change through in October of 2024; however, it did so without complying with SEQRA requirements, so it met again in December 2024 and passed a second resolution (without any notice to Plaintiff). Interestingly, and tellingly, the Planning and Zoning Boards took no action on Plaintiff's application from October to December 2024.

**(ii) Defendants Arbitrarily and Irrationally Infringed on Plaintiff's Interest.**

Defendants' actions constitute outrageously arbitrary governmental action and a denial of due process. *See Brady*, 863 F.2d at 215 (finding that in zoning dispute cases, the "principles of substantive due process assure property owners of the right to be free from arbitrary or irrational zoning actions"). Defendants infringed on Plaintiff's property interest in a patently arbitrary, illegal, "conscience shocking," and "oppressive in the constitutional sense" manner. *Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006); *see also Soundview Assocs.*, 725 F. Supp. 2d at 336. Apart from all of the facts set forth above showing misconduct, even after Defendants required a variance, the Planning and Zoning Boards refused to allow Plaintiff to move forward with the Application, and then later the Town Board enacted the zoning amendment, to delay and ultimately kill the Project.[10]

Defendants' overt refusal to act on any of the outstanding ministerial requests, going so far as to, on more than one occasion, refuse to add the Application to the agendas for Planning and Zoning Board meetings, prevented Plaintiff from completing its Application prior to the enactment of the zoning amendment, resulting in profound damage to Plaintiff. Indeed, had Defendants acted properly and in due course on Plaintiff's requests, and subsequent compromises, to satisfy any lawful conditions for approval, Plaintiff would have received its approval for the Application, exempting Plaintiff from the changes to the Town's newly enacted regulation. Defendants' discriminatory acts, thus deprived Plaintiff of that exemption and eviscerated the approval on which Plaintiff had justifiably relied. These allegations, which must be taken as true at this stage, plainly allege a plausible substantive due process claim.

[10] In *Brady*, the Second Circuit also emphasized that the plaintiff was entitled to be able to prove that the denial of the permit was not simply a mistake but some other indefensible reason such as political or personal animus, which is the case here.

It is ironic that the Town, having failed to add the Application to the agenda of the Planning and Zoning Boards' meetings (and therefore Plaintiffs were not provided an opportunity to address any of the Town's purported concerns/comments), would submit for this Court's consideration a number of self-serving documents, including memos from the "Conservation Board," and advisory board, to suggest that the Application had a number of obstacles. First, as stated above, the inclusion of those documents, which lack a proper foundation, cannot be submitted on a motion to dismiss to dispute the allegations in the Complaint (and may not be considered at all without converting the motion to summary judgment). This is not a motion for summary judgment where the non-moving party would be permitted to submit affidavits and other evidence to create a complete record, nor is the Court permitted to engage in fact finding at this early stage. Second, given that the Application was not permitted to run its course, it is misleading to present documents as "fact" when Plaintiff would have addressed any routine municipal comments in the ordinary course of a land-use application. This does not mean, and cannot mean, that these considerations would have resulted in a denial of the Application as these issues are resolved through the SEQRA process and a property owner would have the ability to address the Town's comments as part of a give-and-take. However, those comments would not be a basis to stop the Project. As the New York Court of Appeals has held, a municipality's "permitted use in a local zoning ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the local community." *In re WEOK Broadcasting v. Planning Board,* 79 N.Y.2d 373, 383 (1992).

## POINT II

## PLAINTIFF HAS SUFFICIENTLY PLED ITS § 1983 FIRST AMENDMENT RETALIATION CLAIM

Plaintiff has sufficiently alleged a violation of its First Amendment rights. "The ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint. [Therefore,] it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *see also Gagliardi v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir. 1994). In *Dougherty*, the Court denied the defendant's motion to dismiss as to the plaintiff's First Amendment retaliation claim where the plaintiff alleged a chronology of events spanning a period of years which displayed a general pattern of egregious treatment by the board. 282 F.3d at 92. Similarly, here, Plaintiff alleged a chronology of events going as far back as 2022, which displayed a general pattern of egregious treatment by the Town Board. Plaintiff's affiliate, AAA Carting, previously sued the Town regarding a municipal contract and publicly criticized the Town's conduct in that regard. Defendants, again try to introduce documents challenging purported "fact," as to whether Defendants actually read the social media criticisms, but as discussed above, Plaintiff receives the benefit of the truth. Further, Plaintiff alleged a pattern of egregious treatment by the Town Board by refusing to award contracts to Plaintiff's affiliate, including an "emergency" contract despite AAA Carting being the lowest responsible bidder.

Any zoning amendment passed with the purpose and effect of blocking a pending application by a politically disfavored applicant states a plausible claim for First Amendment retaliation. The Town's actions—from procedural interference to enacting legislation midstream—were taken after Plaintiff's owner and affiliate's public opposition and litigation efforts. Defendants' conduct can demonstrate an unlawful retaliatory motive aimed at punishing Plaintiff

for protected speech and petitioning activity, and Plaintiff's Complaint adequately sets forth specific facts, which if proven, can support a finding of retaliatory motive. Therefore, Plaintiff has stated a legally cognizable First Amendment claim under § 1983.

## POINT III

## PLAINTIFF HAS SUFFICIENTLY PLED ITS § 1985 CONSPIRACY CLAIM

Defendants argue that the Complaint fails to state a claim for conspiracy. To state a conspiracy claim under 42 U.S.C. § 1985(3), the Complaint must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, *express or tacit*, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (emphasis added). Plaintiff must also allege an "act in furtherance of the conspiracy" and that as a result of the scheme, a person is "either injured . . . or deprived of any right of the citizens of the United States." *Kiryas Joel Alliance v. Village of Kiryas Joel*, No. 11-3982, 2011 WL 5995075, at *11 (S.D.N.Y. Nov. 29, 2011), *aff'd* 495 F. App'x 183 (2d Cir. 2012).

The Complaint alleges that Defendants, including unidentified agents, conspired to interfere with Plaintiff's due process and equal protection rights, motivated by animus against Plaintiff's principals due to prior litigation and speech. Plaintiff's Complaint alleges facts that can be reasonably construed to show coordinated conduct between the Town, Planning and Zoning Boards, and the individual Defendants aimed at frustrating and ultimately mooting Plaintiff's Application. This is demonstrated by the fact that Town officials attempted to force the Building Inspector to reverse his determination, months before any proceedings before the Town Board had taken place. When the Building Inspector refused, the Planning Board attempted to change the Determination, and the Zoning Board then tried to issue the Void Determination and force the

Building Inspector to sign it. Once the Town Board initiated proceedings to try to amend the Zoning Code targeted directly at Plaintiff's Project, the Planning and Zoning Boards stopped Plaintiff's Application. When it became clear the Application would have to be granted either by virtue of the variance or the Alternate Layout, the Town Board, which presumably was not involved in the land-use Application, decided to abolish Recycling Facilities as an as-of-right use. By the Town's own admission, there had never before been a recycling facility in Town so what would have motivated the Town Board from taking that on absent a targeting of this Project. The statements by members of the Town Board, discussed above, demonstrate that the unlawful legislation was to ensure Plaintiff's Project would not open. This is a clear coordinated effort and orchestration by the Defendants.

## POINT IV

## PLAINTIFF'S DECLARATORY JUDGMENT AND N.Y. CPLR ART. 78 CLAIM ARE NOT DUPLICATIVE

Contrary to Defendants' contentions, Plaintiff's declaratory judgment claim is not duplicative—it seeks a forward-looking judicial declaration that the zoning amendment was unlawful and unconstitutional and that Plaintiff's Project is exempt from the Town's amended Zoning Code barring Recycling Facilities in the Town's I-1 District. The relief sought is not available via damages alone. *See* Fed. R. Civ. P. 57.

As to Plaintiff's Article 78 claim, preliminarily, there is no impediment to a federal court exercising jurisdiction over a plaintiff's claims simply because it would fall under Article 78 if brought in state court. *DiMartile v. Hochul*, 80 F.4th 443, 446 n.1 (2d Cir. 2023) (the question of whether federal courts may properly exercise supplemental jurisdiction over claims seeking relief under Article 78 is an unsettled one); *Doe v. New York Univ.*, 537 F.Supp. 3d 483, 491 (S.D.N.Y.

2021). Indeed, district courts in this Circuit have exercised supplemental jurisdiction over Article 78 claims where the court otherwise had federal jurisdiction over other claims raised. *Casale v. Metro Transp. Auth.*, No. 05 Civ. 4232 (MBM), 2005 WL 3466405, at *5–6 (S.D.N.Y. Dec. 19, 2005); 28 U.S.C. § 1367(a) (district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"). Here, as detailed above, Plaintiff has asserted a plausible claim pursuant to 42 U.S.C § 1983, and the Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *Garofalo v. City of New York*, No. 22-CV-7620, 2023 WL 3792514, at *5–6 (E.D.N.Y. June 2, 2023) (extending supplemental jurisdiction over plaintiff's Article 78 claims where there was the same common nucleus of operative fact as plaintiff's § 1983 claims).

To the extent the Defendants argue that the claim is duplicative of Plaintiff's other claims, Plaintiff's Article 78 claim seeks different relief. Here, Plaintiff seeks both injunctive relief and damages resulting from Defendants' multiple violations of federal constitutional law. By contrast, Plaintiff's Article 78 claim seeks only an annulment of the zoning amendment, and on state law grounds. Both claims involve different rights and remedies. *See Bloomingburg Jewish Educ. Center v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 478 (S.D.N.Y. 2015) (finding that the federal litigation and the pending Article 78 challenge were not duplicative, as they involved different rights and different remedies, where the plaintiff sought a reversal of the town's zoning board determination in the Article 78 proceeding as opposed to injunctive relief and damages in the federal litigation). To the extent Defendants wrongly suggest Plaintiff had to challenge the Zoning Board's interpretation within four (4) months, that interpretation was never a final agency action because Plaintiff simultaneously pursued the Alternative Layout and variance relief in efforts to mitigate damages. Until the Zoning Code was changed, Plaintiff still had a viable path

forward. Had Plaintiff commenced an action or proceeding earlier, Defendants most certainly would have complained that Plaintiff did not pursue and exhaust its administrative remedies. In any event, the current action was commenced within four months of the amendment to the Zoning Code, which was in December 2024.

## POINT V

## DISMISSAL OF ANY OF THE CLAIMS IN THE COMPLAINT SHOULD BE WITHOUT PREJUDICE WITH THE RIGHT TO REPLEAD.

Finally, should the Court find any portion of Defendants' Motion to have merit, Plaintiff respectfully requests that any dismissal be without prejudice, and that Plaintiff be granted leave to replead under Rule 15(a)(2) of the Federal Rules of Civil Procedure. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). The Second Circuit has repeatedly emphasized that leave to amend should be "freely given when justice so requires," especially where the deficiencies, if any, could be cured by more detailed factual allegations. Subsequent to the Motion, Plaintiff received a partial response to its FOIL request from the Town and has additional admissions by the Town related to the subject matter of the action.[11]

[11] Plaintiff is mindful of this Court's Individual Rules of Practice § II.A. That being said, until Plaintiff reviewed the Motion and the specific challenges raised to the Complaint, Defendants' specific objections to the pleading were not particularized. This is particularly true here where Defendants submitted many documents for the Court's consideration on the Motion to dispute the allegations of the Complaint. Plaintiff did not want to file a needless amended Complaint and moot the Motion as it is confident that the allegations in the Complaint alone are specific, detailed, and derived mostly from admissions made by the Defendants and proceedings before the Town. That said, Plaintiff should have the opportunity with the benefit of this Court's ruling, to amend, particularly if the basis of the ruling is that the pleading could benefit from more detailed factual allegations.

Accordingly, Plaintiff respectfully requests that the Motion be denied in its entirety, or, in the alternative, that any dismissal be without prejudice and with leave to amend the Complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion should be denied in its entirety.

Dated: New York, New York
June 30, 2025

SAVAD CHURGIN

By: Dennis E. A. Lynch
Dennis E. A. Lynch, Of Counsel
55 Old Turnpike Road, Suite 209
Nanuet, New York 10954
(845) 729-5744

SICHENZIA ROSS FERENCE CARMEL LLP
Nicholas R. Caputo, Esq.
Wynee Ngo, Esq.
1185 Avenue of the Americas, 31st Floor
New York, New York 10036
(212) 930-9700

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum of law complies with all formatting requirements of this Court and contains 8,738 words, including footnotes and headings but excluding the cover page, this certificate, the tables, and the signature blocks. I relied on the word count of the Microsoft Word computer program used to prepare this brief.

Dated: New York, New York
June 30, 2025

Dennis E. A. Lynch

Dennis E. A. Lynch, Of Counsel