UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

76 ROUTE 6 HOLDINGS INC.,

                                    *Plaintiff,*

        v.                                          Case No. 25-CV-693 (KMK)

TOWN OF YORKTOWN, NY, *et al.*                      ORDER & OPINION

                                    *Defendants.*

---

Appearances:

Andrew B. Zinman, Esq.
Nicholas Raymond Caputo, Esq.
Wynee Ngo, Esq.
Dennis E. A. Lynch, Esq.
Sichenzia Ross Ference Carmel LLP
New York, NY
*Counsel for Plaintiff*

Adam Rodriguez, Esq.
David H Chen, Esq.
Katherine Emma Krahulik
Bleakley Platt & Schmidt, LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        76 Route 6 Holdings, Inc. ("Plaintiff"), a corporation, brings this Action against the

Town of Yorktown (the "Town"), the Yorktown Town Board (the "Town Board"), the Yorktown

Planning Board (the "Planning Board") the Yorktown Zoning Board (the "Zoning Board"),

(together, the "Town Defendants"), and five individual members of the Zoning Board, Edward

A. Lachterman, Sergio Esposito, Luciana C. Haughwout, Patrick Murphy, and Susan Siegel

(together, the "Individual Defendants"), (collectively, "Defendants"), as well as twenty John and

Jane Doe Defendants, seeking monetary damages for asserted violations of its rights under the

United States and New York State Constitutions, as well as New York State law, for various actions by Defendants in connection with its efforts to develop a recycling plant in the Town. (Compl. ¶¶ 1, 7–20 (Dkt. No. 1).)  Specifically, Plaintiff's Complaint asserts six counts: (1) a Due Process claim, pursuant to 42 U.S.C. § 1983; (2) a First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983; (3) a conspiracy claim, pursuant to 42 U.S.C. § 1985(3); (4) a Due Process violation, pursuant to Article I, Section 6 of the New York State Constitution; (5) a claim for declaratory relief; and (6) a claim pursuant to New York Civil Practice Law and Rules ("CPLR") Article 78.  (Compl. ¶¶ 99–163.)  Before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim (the "Motion").  (First Mot. to Dismiss Pl.'s Compl. ("Mot.") (Dkt. No. 33).)  For the following reasons, the Motion to Dismiss is granted.

## I.  Background

### A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken," is proper without "convert[ing] the motion to dismiss into one for summary judgment."  *Id.* (quoting *Thomas*, 232 F. Supp. 2d at 275); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its

entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)).

The Court may also consider "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks omitted). And, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document . . . [or] regarding [its] relevance . . . . This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* (citation and internal quotation marks omitted); *see also In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228, 2016 WL 1181727, at *5 (S.D.N.Y. Mar. 25, 2016) (describing categories of materials that may be considered on a motion to dismiss), *aff'd sub nom. Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016).

In conjunction with their Motion, Defendants have submitted a declaration with multiple exhibits. (*See* Decl. of David H. Chen ("Chen Decl.") (Dkt. No. 34).) These are: (1) a copy of Plaintiff's Complaint, (Chen Decl., Ex. A ("Ex. A") (Dkt. No. 34-1)); (2) a copy of a Special Use

Permit Application submitted by Plaintiff, (*id.*, Ex. B ("Ex. B") (Dkt. No. 34-2)); (3) a copy of a memorandum from the Yorktown Building Inspector to the Yorktown Planning Board Chair dated January 11, 2024, (*id.*, Ex. C ("Ex. C") (Dkt. No. 34-3)); (4) a copy of a January 17, 2024 letter from Plaintiff's land use counsel to the Town's Building Inspector, (*id.* Ex. D ("Ex. D") (Dkt. No. 34-4)); (5) a copy of the minutes from a January 22, 2024 meeting of the Town's Planning Board, (*id.*, Ex. E ("Ex. E") (Dkt. No. 34-5)); (6) a copy of a memorandum from the Yorktown Building Inspector to the Yorktown Planning Board dated March 6, 2024, (*id.*, Ex. F ("Ex. F") (Dkt. No. 34-6)); (7) a copy of the minutes from a March 11, 2024 meeting of the Town's Planning Board, (*id.*, Ex. G ("Ex. G") (Dkt. No. 34-7)); (8) a copy of another internal town memorandum dated April 25, 2024, (*id.*, Ex. H ("Ex. H") (Dkt. No. 34-8)); (9) a copy of the minutes from a May 23, 2024 meeting of the Town's Zoning Board, (*id.*, Ex. I ("Ex. I") (Dkt. No. 34-9)); (10) a copy of a June 12, 2024 letter from Plaintiff's land use counsel to the Planning Board of the Town of Yorktown, (*id.*, Ex. J ("Ex. J") (Dkt. No. 34-10)); (11) a copy of a memorandum from the Yorktown Planning Board to the Yorktown Zoning Board of Appeals dated July 25, 2024, (*id.*, Ex. K ("Ex. K") (Dkt. No. 34-11)); (12) a copy of a July 31, 2024 letter to the Yorktown Planning Board from Plaintiff's land use counsel, (*id.*, Ex. L ("Ex. L") (Dkt. No. 34-12)); (13) a copy of a September 17, 2024 letter to the Yorktown Director of Planning from an individual named Scott E. Le Vine, (*id.*, Ex. M ("Ex. M") (Dkt. No. 34-13)); (14) a copy of the minutes from the Yorktown Planning Board's September 23, 2024 meeting, (*id.*, Ex. N ("Ex. N") (Dkt. No. 34-14)); (15) a copy of the minutes from the Yorktown Town Board's August 8, 2024 meeting, (*id.*, Ex. O ("Ex. O") (Dkt. No. 34-15)); (16) a copy of the minutes from the Yorktown Town Board's September 17, 2024 meeting, (*id.*, Ex. P ("Ex. P") (Dkt. No. 34-16)); (17) a copy of the minutes from the Yorktown Town Board's October 1, 2024 meeting, (*id.*,

Ex. Q ("Ex. Q") (Dkt. No. 34-17)); (18) a copy of a December 10, 2024 resolution adopted by the Yorktown Town Board, (*id.*, Ex. R ("Ex. R") (Dkt. No. 34-18)); and (19) a copy of an April 25, 2025 e-mail between counsel for the Parties, (*id.*, Ex. S ("Ex. S") (Dkt. No. 34-19)).  In response, Plaintiff takes the intemperate position that *none* of these materials—even those items that are referenced in its Complaint or matters of public record—is properly before the Court on a Motion to Dismiss.  (Mem. of Law in Opp'n ("Pl.'s Opp'n") 9 n.2 (Dkt. No. 36).) [1]  When presented with such a dispute between the Parties, the Court's duty is to consider which, if any, of these exhibits may be considered on a Motion to Dismiss without converting that Motion to one for summary judgment pursuant to Rule 56.  *See Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 184–85 (E.D.N.Y. 2015) (beginning analysis with a determination of whether documents were properly before the court), *aff'd*, 633 F. App'x 14 (2d Cir. 2016).

Before delving in, a brief overview of the nature of Plaintiff's claims is necessary. Plaintiff asserts that it purchased a plot of land on the border of the Town, where it intended to build a recycling facility (the "Project").  (Compl. ¶¶ 30, 45 n.1.)  It submitted an application outlining its plans for the Project, which ultimately was not granted when certain Defendants interpreted a zoning rule as requiring a 200-foot setback from any residentially zoned parcels of land.  (Compl. ¶¶ 33–34, 45, 48.)  This occurred, Plaintiff alleges, despite an initial favorable

---

[1] As explained above, Plaintiff's extreme position is incorrect.  Plaintiff also contends that Defendants would need to "set forth an[] evidentiary foundation . . . [to] qualify" each of the documents. (Pl.'s Opp'n 9 n.2.)  Not so.  Rather, even where the materials would properly be before the Court, Plaintiff need only to present a dispute "regarding the authenticity or accuracy of the document," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), even one that was grounded in "implicit, conclusory, contradictory, or implausible objections," *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 435 (S.D.N.Y. 2015) (quoting *Fine v. ESPN, Inc.*, 11 F.Supp.3d 209 (N.D.N.Y. 2014)), to preclude a particular document from being considered on a Motion to Dismiss.  Plaintiff has not done so.  (*See generally* Pl.'s Opp'n.)

determination by the Town's Building Inspector.  (*Id.* ¶¶ 35, 48.)  Plaintiff asserts that this denial was retaliatory, and that the Defendants' retaliation was based on criticism by an employee of Plaintiff, who had also been an employee of another company ("AAA Carting") loosely affiliated with Plaintiff, and who had been critical of the Town's denial of AAA Carting's bid to provide trash-hauling services for the Town.  (*Id.* ¶ 25.)  Plaintiff claims that it then submitted a new request, seeking either a variance from the 200-foot setback requirement or looking to construct the Project pursuant to a new plan that would comply with the 200-foot setback requirement. (*Id.* ¶¶ 58, 61–62.)  While that application was pending, in part due to a deferral of decision on an approval vote by the Town Zoning Board, (*id.* ¶ 79), the Town Board unanimously passed a resolution amending the Zoning Code to eliminate recycling facilities as a primary use, (*id.* ¶ 85). The Court's task is to determine whether any of the attached materials are integral to or directly referenced in Plaintiff's Complaint, relied on in Plaintiff's theory of the case as described by the Complaint and actually within Plaintiff's awareness or possession, or otherwise judicially noticeable.

Exhibits A is a filing from this Action.  Although courts "can properly take judicial notice of documents filed in *another court's* docket to establish the fact of the litigation and related filings," *Palisades Estates EOM, LLC v. County of Rockland*, No. 23-CV-04215, 2025 WL 1295333, at *42 n.51 (S.D.N.Y. May 5, 2025) (emphasis added), the Court need not take judicial notice of materials filed at an earlier stage of the *same* proceeding.  Such materials are part of the Action, and therefore not "outside" matters that require notice to be afforded to the Plaintiff before properly being introduced (though, of course, they may be considered only for purposes appropriate to the Motion before the Court).  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (describing, as justification for the conversion

requirement under Rule 12(b), "the lack of notice to the plaintiff that outside matters would be examined" in the absence of this requirement).

Exhibit B—which appears to be a component of the Land Use Permit Application at the heart of this case—is undoubtedly incorporated by reference in Plaintiff's Complaint. "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *In the Matter of the Application of Hampshire Recreation, LLC*, 2016 WL 1181727, at \*5 (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)). In its Complaint, Plaintiff alleges that its land use application seeking to build a recycling plant was unlawfully obstructed and interfered with by Defendants, and that the Defendants' actions ultimately led to re-zoning in the Town, which prevented Plaintiff from constructing the recycling plant. (*See, e.g.*, Compl. ¶¶ 38–41, 113.) Such a document, directly referenced in the pleadings and described by Plaintiff, is properly considered as it is "integral to the Complaint." *Valentini v. Grp. Health Inc.*, No. 20-CV-9526, 2021 WL 2444649, at \*3 (S.D.N.Y. June 15, 2021), *aff'd*, No. 22-157, 2023 WL 2027273 (2d Cir. Feb. 16, 2023). That Application is also undoubtedly "integral" to the Complaint because Plaintiff's allegations depend upon the Applications' terms and effect. *See Nicosia*, 834 F.3d at 230. Plaintiff's theory is that the Application was for a project that, without a shadow of a doubt, could be constructed as-of-right based on the Application. (Compl. ¶¶ 33–35, 37–38, 48, 58, 62, 65–66, 68, 105.) Because this Application not only "documents," but is in fact a core part of "Plaintiff's efforts" to seek approval for the project, "Plaintiff's allegations rely heavily upon its contents," and it may be considered at the Motion to Dismiss stage. *Russo v. Navient Sols., LLC*, No. 16-CV-316, 2018 WL 1474354, at \*5 (D. Vt. Mar. 23, 2018); *see also Mindale Farms Co. v. City of Tallmadge*, No. 23-CV-424, 2024 WL 1209906, at \*2 (N.D. Ohio Mar. 20, 2024) ("[T]he Court

can consider [the plaintiff's] rezoning application because [the plaintiff] refers to the application in the complaint and because the [c]ity's denial of the application forms the basis for most of [the plaintiff's] claims." (citations omitted)); *Bd. of Trs. of Leland Stanford Junior Univ. v. Cnty. of Santa Clara*, No. 18-CV-7650, 2019 WL 5087593, at *4 (N.D. Cal. Oct. 10, 2019) (concluding that the plaintiff's general use permit application, which the plaintiff submitted to its county for approval, was judicially noticeable as a public record reflecting an application to the county).

The same can be said for Exhibit C, a communication from the Building Inspector to the Chairman of the Planning Board, that, under Plaintiff's theory of the case, would have—but for the actions of the other Defendants—permitted it to construct its recycling plant. (Ex. C at 2.) Plaintiff clearly knew of this document, because it repeatedly referenced it in its Complaint, and relied on it, because the theory of Plaintiff's case rests on its terms and effects. (Compl. ¶ 35 (describing the Building Inspector's "Determination" made January 11, 2023, and asserting that this document permitted "construct[ion] as-of-right as proposed in the Application"); *id.* ¶¶ 37–38 (claiming that this determination spurred Defendants to retaliate against Plaintiff).) *See Norales v. Acevedo*, No. 21-549, 2022 WL 17958450, at *2 (2d Cir. Dec. 27, 2022) (summary order) (concluding district court properly determined that materials were "integral to the complaint," where "[k]ey allegations in the complaint rested on the content" of those materials). Moreover, because it is referenced repeatedly in the Complaint and relied on by Plaintiff in framing its theory of the case, it is also incorporated by reference. *See Frank*, 84 F. Supp. 3d at 184 (concluding that while documents were not attached to complaint, as claims arose from decision described in documents, the court could "consider the[] exhibits without converting the present motions to dismiss into motions for summary judgment").

Exhibits E, G, and I are properly noticed on a Motion to Dismiss because they are minutes in the public record.  Each exhibit includes meeting minutes or agendas from public meetings.  (*See* Ex. E; Ex. G; Ex. I.)  These are of the type of materials properly subject to judicial notice.  *See Plank v. Town of Wilton*, No. 23-CV-00808, 2024 WL 4063879, at *3 n.3 (D. Conn. Sept. 5, 2024) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).  As such, the Court takes judicial notice of the Town committee's meeting minutes and of the Town's website." (citation and quotation marks omitted)); *M.G. v. New York State Off. of Mental Health*, 572 F. Supp. 3d 1, 8 n.5 (S.D.N.Y. 2021) (taking "judicial notice of the publicly available government documents, such as the state websites, policies, and regulations").  The Court takes judicial notice of the meeting minutes "for the limited purposes of determining the actions taken by the relevant parties, not for the truth of any statements made during the meeting."  *Knights of Columbus Council 2616 v. Town of Fairfield*, No. 22-CV-1579, 2024 WL 3900102, at *5 n.2 (D. Conn. Aug. 22, 2024) (citing *Lewis v. M&T Bank*, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) (summary order)).

Exhibit F is directly referenced in the Complaint.  (Compl. ¶¶ 49–50 ("On March 6, 2024, the Building Inspector issued another memorandum to the Planning Board in response to the Planning Board's improper request, in which the Building Inspector re-reviewed the Application. The Building Inspector refused to change his position on the Setback Proposal and did not amend his original Determination.").)  Plaintiff's characterization of the facts supporting its retaliation claim rely on this determination—Plaintiff points to this interaction as support for the Defendants' asserted retaliatory actions.  (*Id.* ¶ 51.)  It characterizes the Inspector as "refus[ing] to change his position" despite pressure from Defendants, (*Id.* ¶¶ 38, 50), calling him "a profile

of lawful courage," (*id.* ¶ 40). The Court may "deem [this] document incorporated by reference" on the basis that the "complaint 'refers to' the document" in more than a passing or incidental fashion, *Orosz v. Regeneron Pharms., Inc.*, No. 15-CV-8504, 2016 WL 6083993, at *3 (S.D.N.Y. Oct. 17, 2016) (quoting *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n.2 (S.D.N.Y. 2012); *see also Shehab v. New York State Dep't of Transp.*, No. 03-CV-5730, 2005 WL 659146, at *2 (S.D.N.Y. Mar. 10, 2005), *report and recommendation adopted sub nom. Shehab v. New York State Dep't of Transp.*, 2005 WL 954912 (S.D.N.Y. Apr. 26, 2005), and because its "contents [are] central to Plaintiff['s] allegations," *In re Ferrellgas Partners, L.P., Sec. Litig.*, No. 16-CV-7840, 2018 WL 2081859, at *8 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) (summary order).

Exhibit J is properly considered at this juncture because it is directly referenced in the Complaint, and because it forms the basis of one of Plaintiff's theories of its Due Process Claim. (*See* Compl. ¶ 61 (referencing Plaintiff writing to the Planning Board to explain that it had formulated an alternative layout for the Project).) This message was within Plaintiff's possession and Plaintiff relied on it in drafting its Complaint, as Plaintiff argues that its submission of the alternative layout demonstrates that Defendants were deliberately disregarding the fact that it had a supposedly conforming version of the Project that it should have been entitled to construct as of right. (*See* Compl. ¶¶ 60, 109.) Accordingly, this Exhibit, too, may be considered in evaluating the Motion to Dismiss. *See In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *8 (explaining plaintiffs cannot "have it both ways" when they "reference and rely upon . . . documents" then attempt to preclude their consideration).

In the alternative, the Court would also conclude that the above-described materials are public records that may properly be considered on a Motion to Dismiss pursuant to Rule

10

12(b)(6). Courts routinely consider similar government documents on such a Motion—for instance, "special permits" given to membership clubs by a local government, *In the Matter of the Application of Hampshire Recreation, LLC*, 2016 WL 1181727, at \*5, "documents in the public record, including the decisions of [a town zoning appeals board]," *Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011), or zoning board meeting minutes, *id.* (citing *Nw. Bypass Group v. U.S. Army Corps of Engineers*, 488 F. Supp. 2d 22, 25–26 (D.N.H. 2007)). *See also Pappas v. Town of Enfield*, No. 08-CV-250, 2010 WL 466009, at \*3 (D. Conn. Feb. 3, 2010) (noting it would be appropriate to consider a land use application that was "repeatedly referred to in the [c]omplaint," which might "be a matter of public record," but choosing not to do so in part because the contents of the application were unnecessary to the motion to dismiss); *Heathcote Assocs. v. Chittenden Tr. Co.*, 958 F. Supp. 182, 185 (D. Vt. 1997) (taking "judicial notice of the decision and order of the [state] [s]uperior [c]ourt granting [the plaintiff] a zoning variance").[2]

The Court does not consider the remaining exhibits attached to the Motion to Dismiss, as they are not necessary to support the decisions it reaches herein.

---

[2] While Plaintiff argues that *none of* the materials submitted can be considered for the truth of the matters asserted in them, it is beyond cavil that the Court may "consider[] the documents . . . for the facts of their contents," which, in any event, are the only "facts" relevant to the Motion before the Court. *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 70 n.79 (S.D.N.Y. 2013).

Plaintiff also represents that a Second Circuit case, *Goel v. Bunge*, 820 F.3d 554 (2d Cir. 2016), contains the following language about judicial notice: a defendant "may not rely on statements in the documents for the truth of the matter asserted." (Pl.'s Opp'n 9 n.2.) This decision does not contain this language. Plaintiff and its counsel are advised that they must ensure the accuracy of all quoted materials in Plaintiff's filings pursuant to their duties under Rule 11. *See, e.g.*, *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely."); *Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324, 2026 WL 265581, at \*10 (D. Kan. Feb. 2, 2026) (explaining, "[t]here is no question that citing to a nonexistent case, attributing a nonexistent quotation to an existing case, and misstating the law violates Rule 11(b)" and imposing monetary sanctions).

B. Factual Background

The following facts are drawn from Plaintiff's Complaint and the other materials properly considered on a Motion to Dismiss. The facts taken from the Complaint are taken as true for the purposes of resolving the instant Motion. *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 246 (2d Cir. 2024). In this account, the Court does not include Plaintiff's allegations that amount to no more than conclusions of law. *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

1. Refuse Hauling History

A non-Party company, AAA Carting and Rubbish Removal, Inc. ("AAA Carting"), allegedly has an acrimonious history with the Town. (*See* Compl. ¶¶ 21–22.) AAA Carting sought, in a competitive bidding process, municipal contracts regarding refuse and recycling services. (*Id.* ¶ 22.) Nevertheless, AAA Carting lost the contracts. (*Id.*) Within a year of the competitor receiving the contract, the Town was forced to declare an emergency and re-bid the contract as the competitor-hauler had its trucks repossessed, was unable to pay its employees, and ultimately breached its contract with the Town. (*Id.* ¶ 23.) At some unspecified point in "late 2022," AAA Carting brought suit in New York State Court regarding this bidding process. (*Id.* ¶ 22.) In the second bidding process, Plaintiff says that AAA Carting was "the lowest responsible bidder," but the contract was nevertheless awarded to another entity. (*Id.* ¶ 24.)

Plaintiff believes that "the Town and certain of its representative[s]" have "unlawful animus" towards it and AAA Carting, as well as their shared principals and employees. (*Id.* ¶ 25.) This animus "only increased" when an unspecified individual employed by AAA Carting posted undescribed comments critical of the Town's handling of the refuse and recycling bids and contracts on a community social media board. (*Id.*) That employee is also an employee of Plaintiff. (*Id.* ¶ 26.) Plaintiff does not allege whether the employee publicly identified themself

in the comments, or whether the employee publicly identified themself as *Plaintiff's* employee. (*See generally* Compl.)

> 2.  Land Purchase and Land Use Applications

On July 28, 2023, Plaintiff acquired property (the "Property") located at 76 Route 6, in the Town, to construct a recycling facility.  (*Id.*  ¶¶ 1, 7, 30.)  Accordingly, it planned and undertook zoning due diligence with an eye to constructing a forty-thousand-square-foot processing facility (the "Building") and accompanying components, like an outdoor parking lot (together the "Project").  (*Id.* ¶¶ 32, 64.)  The Property was located in the Town's "I-1 (Light Industrial) District," an area, Plaintiff says, that has "long permitted recycling facilities" as an "as of right" land use.  (*Id.* ¶ 31.)  According to Plaintiff, where a project is subject to as-of-right approval, the review process is expeditious, whereas land use that requires a zoning variance is subject to a discretionary, time-consuming review process. (*Id.* ¶¶ 65–66.)

On December 7, 2023, Plaintiff says that it submitted an as-of-right Land Use Application (the "Application") to the Town seeking site plan approval of the Project.  (*Id.* ¶ 33.) It appears that a component of this project also required a "Special Use Permit," which would be approved by the Town of Yorktown Planning Board; Plaintiff submitted an application for this permit (the "Special Use Application") on December 27, 2023.  (Ex. B at 2.)  The Special Use Application, which is appended to Defendant's Motion to Dismiss, indicates that Plaintiff sought a special use permit for "Accessory recycling facilities," pursuant to § 300-81.2 of the Yorktown Zoning Code.  (*Id.*)  In its application, Plaintiff proposed that the Building be set back 100 feet from the property line on the Eastern side of the Property.  (Compl. ¶ 34.)

On January 11, 2024, the Town's Building Inspector (the "Inspector") issued a determination (the "Determination") that, Plaintiff says, would have permitted the Project to be

constructed as of right. (*Id.* ¶ 35.)  In that Determination, the Inspector did not object to the proposed location of the Building. (*Id.*)  In the copy of this Determination provided by Defendants, the Inspector states that he "completed a preliminary review" of the Property. (Ex. C. at 2.)  He offered three comments related to the "turning radius of [a] cul-de-sac . . . to the North of the property," and the "fire apparatus access road at the rear of the [B]uilding," and suggesting consultation with and approval from the Town Fire Department. (*Id.*)  The document does not reference the Building setback. (*Id.*)  The Planning Board did not appeal the Inspector's Determination to the Zoning Board, although, Plaintiff claims, the Town's Code provides a thirty-day period to do so. (Compl. ¶ 36.)  Plaintiff does not include any allegations as to the disposition of its Special Use Permit Application separate from its allegations as to the disposition of the Project application as a whole. (*See generally* Compl.)

On January 22, 2024, the Planning Board held a meeting at which it discussed Plaintiff's Application. (*See* Ex. E.)  The meeting minutes suggest that Plaintiff's project was placed on the Board's agenda with the notation that the "proposed accessory storage for the recycling facility requires a special use permit." (*Id.* at 4.)  The minutes also suggest that the question of the distance that the Building needed to be set back from the eastern side of the property came up at this meeting: a member of the Board reportedly asked whether the Building needed to be set back at a distance of 200 feet from the eastern side based on the Town's Zoning Code. (*Id.* at 5.)  At this same meeting, the minutes reflect, the Board "requested input from the Town Attorney with respect to the zoning before proceeding further with the [Special Use A]pplication." (*Id.* at 6.)

Plaintiff claims that "Defendants and/or their predecessors in interest" tried to prevent the Application from being considered pursuant to the as-of-right process. (Compl. ¶¶ 37–38.)

14

Plaintiff alleges that the Town took this action because Plaintiff was owned by the same individuals as AAA Carting. (*Id.* ¶ 39.)[3] Unspecified Town officials tried to force the Inspector to change his Determination to require a larger setback on the eastern property line. (*Id.* ¶ 38.) If successful, this change would require Plaintiff to obtain a variance and preclude as-of-right approval. (*Id.*) However, the Inspector allegedly thwarted this plot by refusing to change his Determination. (*Id.* ¶ 40.)

The Application was next discussed at the Planning Board's February 12, 2024 meeting. (*Id.* ¶ 42.) Plaintiff asserts that no notification was given to its counsel regarding the February 12 meeting. (*Id.*) At this meeting, Plaintiff claims, the Board concluded that, notwithstanding the Inspector's Determination, the proposed setback was noncompliant for as-of-right approval. (*Id.* ¶ 43.) The meeting minutes tell a different story.[4] They suggest that the Board received a memorandum from its attorney, and that the attorney disagreed on the setback issue "because [the] property line adjoins a residential zone over the town line in the Town of Somers." Town of Yorktown, NY, Planning Board Meeting Minutes (Feb. 12, 2024) https://docs.google.com/gview?url=https%3A%2F%2Fyorktownny.granicus.com%2FDocument Viewer.php%3Ffile%3Dyorktownny_50bb506db78d8f268917b4b2105f3ba6.pdf%26view%3D1 &embedded=true [https://perma.cc/WXH4-TKFF]. The minutes suggested that the Director of

---

[3] Plaintiff also alleges that this animus arose from "the prior litigation," but, except for the brief reference to AAA Carting's litigation related to the bid, the Complaint does not include allegations as to the nature and disposition of that litigation. (*See generally* Compl.)

[4] While these minutes were not attached to Defendants' Motion to Dismiss, they are properly before the Court as they are publicly available documents from an official government website, and therefore subject to judicial notice. *See Plank*, 2024 WL 4063879, at *3 ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6). As such, the Court takes judicial notice of the Town committee's meeting minutes and of the Town's website." (citation and quotation marks omitted)).

15

Planning and Plaintiff would need to address the setback issue, and specifically "whether the site plan is redesigned or a variance is requested." *Id.* at 1.[5]  The video recording of the February 12, 2024 meeting, which is likewise publicly available on the Town's website and judicially noticeable on a Motion to Dismiss, confirms the accuracy of the minutes as to the contents of what was discussed.  *See* Town of Yorktown, NY, *Planning Board* (last visited Mar. 6, 2026), https://www.yorktownny.gov/living-in-yorktown/yorktown-government-channel/planning-board/ (navigate to 2024 tab, scroll to "February 12, 2024 – 7:00 PM" and select "video"); *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 695 n.3 (S.D.N.Y. 2011) ("[T]he minutes and recordings of the City Council meetings are matters of public record and therefore are the types of materials of which a court may take judicial notice.").  The Planning Board's attorney's determination was based on Section 300-97(A) of the Zoning Ordinance, which provides, in part, that "no building shall be located at a distance less than 200 feet from a boundary which adjoins any residence district or less than 100 feet from all other boundaries of the lot."  (Compl. ¶ 45.)  (Plaintiff

---

[5] Plaintiff makes the additional assertion that its application was placed on the Planning Board's agenda for the February 12, 2024 meeting.  (Compl. ¶ 43.)  The meeting agenda, which is likewise properly before the Court because it is subject to judicial notice, included simply "Correspondence," an entry that, it seems, is included on each of the Board's meeting agendas. *Compare* Town of Yorktown, NY, Public Meeting Agenda, at 1 (last revised Feb. 9, 2024) https://docs.google.com/gview?url=https%3A%2F%2Fyorktownny.granicus.com%2FDocument Viewer.php%3Ffile%3Dyorktownny_6f7e42005c7418fa9d9e60f0d1fb882c.pdf%26view%3D1 &embedded=true [https://perma.cc/EBB6-D7DN] (agenda for the Town Planning Board Meeting held Feb. 12, 2024), *with* Town of Yorktown, NY, Public Meeting Agenda, at 1 (last revised Aug. 9, 2024) https://docs.google.com/gview?url=https%3A%2F%2Fyorktownny.granicus.com%2FDocument Viewer.php%3Ffile%3Dyorktownny_702162d60038d32623f76741e8f93f7b.pdf%26view%3D1 &embedded=true [https://perma.cc/ZE6U-99W8] (agenda for the Town Planning Board Meeting held Aug. 12, 2024).  "A court need not accept a factual allegation as true when its falsity is obvious and apparent in light of facts of which a court can take judicial notice." *Simon v. Keyspan Corp.*, 785 F. Supp. 2d 120, 137 n. 122 (S.D.N.Y. 2011), *aff'd*, 694 F.3d 196 (2d Cir. 2012).

asserts that this restriction does not apply because the eastern property line abuts a lot located in another town, and because the adjacent property is subject to a commercial use.  (*Id.* ¶ 45 n.1.))  The Town's attorney emailed this determination to Plaintiff's counsel on February 13, 2024.  (*Id.* ¶ 44.)

On March 6, 2024, the Inspector issued a memorandum again reviewing the Application, and again declined to amend his original Determination.  (*Id.* ¶¶ 49–50.)  The Determination, which Defendants produced, states that the Inspector "[p]ursuant to [the Planning Board's] request," had "re-reviewed the plans provided."  (Ex. F at 2.)  The Inspector said that the "revised set of plans satisf[ied] [his] previous memo, dated January 11, 2024, and [he would] offer no additional comments."  (*Id.*)  Upon this "re-review[]" being completed, (*id.*), the Planning Board indicated that it would not review the Application as ruled on by the Inspector, but instead requested that the Zoning Board of Appeals determine whether the Application needed to comply with the 200-foot setback requirement on the eastern property line.  (Compl. ¶ 51.)

The request that the Zoning Board of Appeals determine whether the Application needed to comply with the setback appears to have occurred at a Planning Board meeting held on March 11, 2024.  (*See* Ex. G at 5–7.)  Plaintiff's counsel attended that meeting and took the position that the Inspector was the appropriate individual to render a determination on the setback issue, and further reserved the right to argue that the Inspector had already rendered such determination. (*Id.* at 6.)  The Planning Board disagreed, but recognized that under the Yorktown Zoning Code, it (as an agency of the Town) could request that the Zoning Board decide questions of interpretations of the Code.  (*Id.*)  So, the question was referred to the Zoning Board.  (*Id.*)

17

On May 23, 2024, the Zoning Board conducted a hearing related to the Planning Board's determination request.  (Compl. ¶ 52.)  At this hearing, as with other hearings involved in this Action, the same employee of Plaintiff who spoke out about the Town's mishandling of the AAA Carting refuse and recycling bids represented Plaintiff.  (*Id.* ¶ 26.)  Plaintiff alleges that its counsel (who may or may not be the aforementioned employee) was "not permitted" to develop a record at this hearing, because counsel was not allowed to "examin[e] . . . the Building Inspector."  (*Id.* ¶ 53.)  At the conclusion of the hearing, the Board did not conform to the Inspector's interpretation of the Zoning Ordinance, but determined that a 200 foot setback was required.  (*See id.* ¶¶ 53–54; *see also* Ex. I. at 11–12 (meeting minutes suggesting that Zoning Board heard argument from Plaintiff's land use counsel, the Board heard briefly from the Building Inspector, and heard from various residents, before deciding that the 200-foot setback was required).)  Plaintiff claims that the Zoning Board did not "issue a written decision," (Compl. ¶ 55), but, despite failing to issue anything in writing, somehow directed the Inspector to sign its determination.  (*Id.* ¶ 56.)

Next, Plaintiff filed a request with the Zoning Board for an area variance (the "Variance Application").  (*Id.* ¶ 58.)  Plaintiff also proposed to move the Building to another section of the Property to address the asserted issues with the Project, (the "Alternative Layout").  (*Id.* ¶ 59.)  On July 15, 2024, Plaintiff presented the Alternative Layout, which met all setback requirements, to the Planning Board.  (*Id.* ¶ 60.)  Plaintiff's land use counsel wrote to the Planning Board to notify the Town Board that the Variance Application was complete.  (*Id.* ¶ 61.)  Counsel requested that it be added to the August 8, 2024 Zoning Board meeting agenda.  (*Id.*)  Defendants attach a copy of this letter to their Motion to Dismiss.  (*see* Ex. J.)  The text of that letter reveals that Plaintiff was seeking—but had not yet applied for—"Site Plan, Special Permit,

and Wetland Permit approval" to develop the Project with the Alternative Layout. (*Id.* at 2 ("Prior to appearing before the [Zoning Board of Appeals, which will review the variance request], we would like to get your Board's take . . . ."); *id.* at 3 (describing the Alternative Layout and suggesting that the Alternative Layout was a less appropriate way to accommodate the use); *see also* Compl. ¶ 62 (describing Plaintiff as "ready to continue with the Variance Application since it could be granted with only a minor area variance").)

Certain Defendants then took steps to repeal portions of the Town Code that applied to recycling facilities like the Project. (Compl. ¶ 63.) On August 8, 2024, the Town Board held a meeting, at which it stated that it intended to propose an amendment to Chapter 300, Sections 81.2 and 94C(10) of the zoning ordinance. (*Id.* ¶ 69.) No Party has provided copies of these Sections of the zoning ordinance that were in effect at the time of Plaintiff's Application(s), and the Court has been unable to find the former version of these sections in the publicly available copy of the Town's Code, which reflects only that those sections have been repealed or amended on December 10, 2024. (*See* Defs.' Mem.; Compl.) *See* Yorktown N.Y., Code §§ 300-81.2, 300-94 (2025). Plaintiff claims that this amendment had the specific purpose of eliminating recycling facilities from the as-of-right use opportunities contained in these sections. (Compl. ¶ 69.) At the meeting, the Town Board "effectively communicated that this change of zoning was necessary to prohibit Plaintiff from operating its Recycling Facility at the Property and admitted, to the cheers of the large public crowd . . . that the change of zoning was targeted specifically towards . . . [the] Project." (*Id.* ¶ 70.) The Town Board referred the matter to the Planning Board to opine on the proposed change of the zoning code. (*Id.* ¶ 72.)

On August 9, 2024,[6] the Planning Board issued an agenda for an August 12, 2024 meeting that did not include Plaintiff's new application. (*Id.* ¶ 73.) Plaintiff's counsel emailed the Planning Board to ask about this omission. (*Id.* ¶ 74.) Counsel received a call from John Tegeder, the Town's planner. (*Id.* ¶ 75.) Tegeder advised that the Planning Board wanted to "allow the proposed zoning amendment process to play out," and this had led to the omission of Plaintiff's application. (*Id.*) On August 12, 2024, at the meeting, the application was not on the agenda. (*Id.* ¶ 76.) Still, the Planning Board discussed the proposed zoning change, before tabling its vote due to the absence of two board members. (*Id.* ¶ 77.)

On September 12, 2024, the Zoning Board held a public meeting, during which it discussed Plaintiff's requested variance. (*Id.* ¶ 79.) The Zoning Board refused to vote, adopting a resolution adjourning the application indefinitely. (*Id.*) Members of the Zoning Board specifically cited the Town Board's decision to change the Town's zoning to eliminate recycling facilities as justification for the delayed vote. (*Id.*)

On September 23, 2024, the Planning Board held another meeting. (*Id.* ¶ 81.) At this meeting, it was announced that, instead of eliminating recycling facilities from Chapter 300 of the Zoning Code, the Planning Board would propose an amendment to the definition of Recycling Facilities under the Code. (*Id.*) Plaintiff represents that this change would have allowed some of the uses Plaintiff intended for the Property, but not all of them. (*Id.*) The Planning Board announced that it would send a memorandum on this topic to the Town Board. (*Id.*) However, that memorandum was not disclosed to Plaintiff or made public. (*Id.* ¶¶ 82–84.)

---

[6] The Complaint alleges that this agenda was issued on "August 9, 2014," (Comp. ¶ 73), but as the remainder of the allegations are consistent with an August 9, 2024 date, the Court concludes that this was likely scrivener's error.

On October 1, 2024, the Town Board passed unanimously a resolution that amended the Zoning Code to eliminate recycling facilities as a primary use. (*Id.* ¶ 85.) This resolution was not included in the Town Board's proposed agenda. (*Id.* ¶ 86.) Plaintiff submits that these actions did not comply with New York State Law and specifically the State Environmental Quality Review Act ("SEQRA"), *see* N.Y. Comp. Codes R. & Regs. tit. 10, § 128-2.10. (Compl. ¶ 89.) Also on October 1, 2024, a member of the Town Board wrote on a public blog that, "After closing the public hearing, the Board, in a unanimous vote, adopted the local law that eliminated recycling from the Zoning Code as a permitted use in a light industrial zone. Based on the vote, there is nothing in the Zoning Code that would allow the Planning Board to continue reviewing the current application for a recycling facility on Route 6." (*Id.* ¶ 88.)

Given the asserted noncompliance with state law and SEQRA, on December 10, 224, the Town Board attempted to remedy the compliance issues by making references to certain SEQRA documents and other considerations that, Plaintiff alleges, were not before the Board at its October 1, 2024 vote. (*Id.* ¶¶ 90–91.) That same day, the Board again attempted to amend Chapter 300. (*Id.* ¶ 92.) But again, Plaintiff says, the Board did not comply with SEQRA. (*Id.* ¶ 93.)

C.  Procedural Background

On January 23, 2025, Plaintiff commenced this Action. (*See* Compl.) In the Complaint, Plaintiff asserts six counts: (1) Violations of its Due Process rights under the Fifth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 against all Defendants, (Compl. ¶¶ 99–127); (2) violations of its First Amendment right to petition and retaliation for its exercise thereof, pursuant to 42 U.S.C. § 1983 against all Defendants, (Compl. ¶¶ 128–35); (3) a violation of 42 U.S.C. § 1985 against all Defendants and their agents, (Compl. ¶¶ 136–45); (4) a violation

of Plaintiff's Due Process rights under Article I, Section 6 of the New York State Constitution, (Compl. ¶¶ 146–51); (5) a request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) against all Defendants, based on the same violations, (Compl. ¶¶ 152–58); and (6) a request for Judgment, pursuant to Article 78 of the New York Civil Practice Laws and Rules, (Compl. ¶¶ 159–163).

On March 25, 2025, pursuant to the Court's Individual Rules, Defendants requested a pre-motion conference to discuss an anticipated Motion to Dismiss. (Letter from Adam Rodriguez, Esq. to Court dated Mar. 25, 2025 (Dkt. No. 27).)  The Court held a pre-motion conference on April 8, 2025, and set a briefing schedule for the anticipated Motion. (*See* Dkt. (minute entry for proceedings on Apr. 8, 2025).)  Defendants filed their Motion to Dismiss on May 30, 2025, (s*ee* Mot.), as well as their supporting Memorandum of Law, (First Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 35)).  Plaintiff filed its Brief in Opposition on June 30, 2024.  (*See* Pl.'s Opp'n.)  Defendants filed their Reply Brief on July 13, 2025.  (Reply Mem. of Law ("Defs.' Reply") (Dkt. No. 37).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it

22

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  As described above, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.

23

1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).[7]

B.  Analysis

　　1. Absolute Immunity

Before addressing the sufficiency of Plaintiff's claims against Defendants, the Court will address the issue of absolute immunity, which has been asserted by each Individual Defendant. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 394 (2d Cir. 2006) (noting absolute immunity "defeats a suit at the outset" (quoting *Imbler v. Pachtman,* 424 U.S. 409, 419 n.13 (1976))).  The Individual Defendants contend that they are absolutely immune on the basis that, at all times described in the Complaint, they were acting in their legislative capacities.  (*See* Defs.' Mem. 17.)

"The common-law doctrine of official immunity governs civil liability for public servants acting in their legislative capacity." *Schubert*, 775 F. Supp. 2d at 699.  This immunity derives from the Speech or Debate Clause of the Federal Constitution, which provides members of the United States Congress with absolute immunity from civil and criminal liability for conduct that

---

[7] Plaintiff asserts that "[w]here a party is alleging civil rights violations under 42 U.S.C. § 1983, courts should apply this standard with 'special solicitude' toward the party asserting the constitutional violations," citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (Pl.'s Opp'n 14.)  Again, *see* n.2, *supra*, the purportedly quoted language appears *nowhere* in the cited decision.  *See generally McEachin*, 357 F.3d 197.  Plaintiff's counsel is under a duty to ensure the veracity of all quotations included in the filings, or counsel runs the risk of sanctions.  *See In re Molina*, No. 21-70830, 2025 WL 2697623, at *21–22 (Bankr. E.D.N.Y. Sept. 22, 2025) (imposing nonmonetary sanctions on a party where that party made a filing that included "fictitious case citations").  Moreover, *McEachin* establishes no such rule of law.  Rather, that case says simply that "**when the plaintiff proceeds *pro se*,** . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin*, 357 F.3d at 200.  As should be obvious given that Plaintiff is a corporation, Plaintiff is not a *pro se* litigant, and so is not entitled to such liberal construction.

24

falls "within the sphere of legitimate legislative activity." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (characterizing U.S. Const. art. I, § 6, cl. 1); *see also NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 190 (2d Cir. 2019) (same). The Supreme Court has held that "under the common law, state and local government officials similarly enjoy absolute immunity against federal civil claims asserted against them in their individual capacities for equivalent legislative activity." *NRP Holdings LLC*, 916 F.3d at 190 (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)). Local legislative boards, including Town Boards, are entitled to legislative immunity if they are acting in a legislative capacity. *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 27 (S.D.N.Y. 2022) (explaining, in case involving a town board, "[t]his immunity has been extended to local legislative boards"). "[F]ederal common-law legislative immunity protects state and local officials only against federal civil law claims; it does not preclude federal or state criminal prosecutions or the pursuit of state-law causes of action for damages." *NRP Holdings LLC*, 916 F.3d at 190 n.10.[8] This immunity, moreover, "does not apply to official-capacity suits." *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 558 (D. Conn. 2008) (citing *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 73 (2d Cir. 1992)); *see also Schubert*, 775 F. Supp. 2d at 699.[9]

---

[8] The immunity afforded to state and local officials, unlike that afforded to federal officials, may also be abrogated by statute. *NRP Holdings LLC*, 916 F.3d at 190 n.10. No Party has pointed to any such statute that might apply in this Action. (*See generally* Defs.' Mem.; Pl.'s Opp'n.)

[9] Plaintiff suggests that "common law immunity for officials does not extend to federal civil rights claims." (Pl.'s Opp'n 15.) This is incorrect. *See Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997) ("There has long been recognized an absolute legislative immunity exception to § 1983 liability for individuals."). The case that Plaintiff cites in support of this proposition, *Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead by its Bd. of Trs. of Vill. of New Hempstead*, 98 F. Supp. 2d 347, 356–58 (S.D.N.Y. 2000), held that the common law immunity principles for state officials under *New York State law* were not coextensive with the "guidelines that govern immunity [for state officials] under federal civil rights claims," and so rejected a

To determine whether an act is "legislative in nature" the Second Circuit has provided a two-part test:

> First, it is relevant whether the defendants' actions were legislative in *form*, *i.e.*, whether they were integral steps in the legislative process. Second, it may also be relevant whether defendants' actions were legislative in *substance*, *i.e.*, whether the actions bore all the hallmarks of traditional legislation, including whether they reflected discretionary, policymaking decisions implicating the budgetary priorities of the government and the services the government provides to its constituents.

*State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 89 (2d Cir. 2007) (first emphasis added) (internal quotation marks, citations, and alterations omitted); *see also id.* at 89 (explaining that "before high-level executive branch officials in [a state] can claim the protections of an immunity traditionally accorded to members of the legislative branch, it is important that they show that their activities were 'legislative' both in form and in substance").

As to the Individual Defendants, the Complaint contains a limited number of non-conclusory allegations. These are: (1) upon realizing that the town's zoning scheme would permit as-of-right construction of the recycling facility, unspecified "Town officials attempted to . . . compel the Building Inspector to change his Determination," but failed to do so, (Compl. ¶¶ 37–38); (2) at an August 8, 2024 meeting, "the Town Board," of which the Individual Defendants were members, "effectively communicated that [the proposed] change of zoning was necessary to prohibit Plaintiff from operating its Recycling Facility at the Property and admitted, to the cheers of the large public crowd providing unlawful political pressure, that the change of zoning was targeted specifically towards Plaintiff's proposed Project," (*id.* ¶¶ 19, 70); (3) the

---

plaintiff's argument that relied on three cases describing *state* common law immunity. *See, e.g.*, *Williams v. Reed*, 604 U.S. 168, 174 (2025) (explaining that the doctrines differ, in part on the basis that "states possess no authority to override Congress's decision to subject state officials to liability for violations of federal rights" (quotation marks omitted)).

Town Board referred the proposed amendment to the Planning Board, (*id.* ¶ 72); (4) the chairperson of the Planning Board, "Richard Fon," who was not named as a Defendant here, suggested that the Board should "dig into the weeds" about the proposal before enacting it, and Defendant Esposito told Mr. Fon, "we value your opinion; if you need to table and need more time, so be it," (*id.* ¶ 77); (5) Defendant Siegel "wrote to a town resident in response to a question about the Project: 'Recycling, Yes, the boards plan to eliminate this type of project from the code. I support that move,'" (*id.* ¶ 78); (6) an unidentified Town board member posted the following statement on a public blog: "Recycling.  After closing the public hearing, the Board, in a unanimous vote, adopted the local law that eliminated recycling from the Zoning Code as a permitted use in a light industrial zone.  Based on the vote, there is nothing in the Zoning Code that would allow the Planning Board to continue reviewing the current application for a recycling facility on Route 6," (*id.* ¶ 88); and, finally, (7) the Town Board's passed unanimously a resolution that amended the Zoning Code to eliminate recycling facilities as a primary use, and subsequent re-passage of that amendment a few months later to remedy certain asserted procedural defects, (*id.* ¶¶ 85, 90–91).[10]

---

[10] Plaintiff also cites, in support of its argument that Defendants are not entitled to legislative immunity, actions taken at a public meeting, including the decision to adjourn the application on Plaintiff's application for a variance.  (*See* Compl. ¶ 79.)  However, these actions are alleged to have been taken by the Zoning Board, and so there is no suggestion that the Individual Defendants—who are alleged to have been members of the Town Board—were involved in this decision.  (*See id.*)  The same is true of an alleged communication from the Town Supervisor to the Board stating, "I do not feel that the new proposed, transfer station is what was intended in the law.  Our hearing today is to remove it as an allowed use so it could be looked at later down the line." (*Id.* ¶ 80.)  This individual's statement does not provide a basis for liability of the Individual Defendants, at least without more facts than those alleged here. *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000) ("A defendant in a § 1983 action may not be held responsible unless he was personally involved in the alleged constitutional violations.").

As is obvious from the foregoing, Plaintiff's allegations as to the Individual Defendants are overwhelmingly based on their decision to rezone his property. Such challenges to the enactment of rezoning ordinances are not uncommon, and courts faced with the question whether individual defendants should be held liable in these cases overwhelmingly conclude that they should not be. *See, e.g.*, 5 Patricia E. Salkin, Am. Law. Zoning § 46:5 (5th ed. 2025) ("Local officials are typically found to have legislative immunity under Section 1983 with respect to the adoption of zoning ordinances," and "[t]he same rule has been applied to rezoning decisions'") (collecting cases)).

In one of the leading such cases, *Biblia Abierta v. Banks*, 129 F.3d 899, 901 (7th Cir. 1997), the Seventh Circuit considered whether city aldermen were individually liable for "introducing a zoning ordinance to the Chicago City Council Zoning Committee and voting for the ordinance." In that action, a plaintiff-church acquired a parcel of property with the intent to use it as a place of worship. *Id.* This use would have been permitted under Chicago's then-effective zoning ordinance. *Id.* However, before a scheduled hearing to review the plaintiff's application, a defendant-alderman issued an ordinance to rezone the property, prohibiting use of the property as a church by right or by special use permit. *Id.* Before the vote occurred on the plaintiff's application, the hearing where that vote was due to occur was postponed; in the interim, the new zoning ordinance was passed unanimously and the plaintiff was unable to purchase the property for use as a church. *Id.* Then, another church attempted to acquire property in a different neighborhood to use as a place of worship; in response, a different defendant-alderman succeeded in re-zoning the neighborhood, and the second church was unable to purchase and use the property as a church. *Id.* at 902.

28

The Seventh Circuit concluded that the aldermen were absolutely immune from suit for introducing and voting for the zoning ordinances. *Id.* at 903–04. As the panel explained, "[i]ntroducing and voting on legislation are elements of the core legislative process and cannot be separated from that legislative function. As such, they are entitled to absolute immunity." *Id.* at 904 (citation omitted). The panel also concluded that the rezoning ordinances constituted legislation for immunity purposes. *Id.* This was because, "[a]lthough the initial effect of these zoning ordinances impacts the [plaintiffs], the ordinances apply equally to all persons. In passing the ordinances, the Zoning Committee and the City Council created neutral, prospective rules that apply to all current and future owners of the property." *Id.*

Courts in the Second Circuit, faced with similar attempts to hold individual defendants liable for the enactment of rezoning ordinances, have reached the same conclusion on the same grounds. *See, e.g.*, *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 237 (E.D.N.Y. 2014) (explaining that, where only involvement in alleged violations was the act of "voting for a resolution," individual defendants were entitled to legislative immunity); *The Anderson Grp., LLC v. City of Saratoga Springs*, 557 F. Supp. 2d 332, 344 (N.D.N.Y. 2008) (reasoning that "zoning ordinances . . . generally represent quintessential legislation," and that, even if those ordinances "impacted significantly on property . . . predominantly owned by [the plaintiffs]," where the zoning "was, at least facially, consistent with a greater land use policy for the City" and would impact things like the City's "character . . . tax revenues and expenditures," and would "also bind future owners of property," it was legislative activity), *aff'd in relevant part sub nom. Anderson Grp., LLC v. Lenz*, 336 F. App'x 21 (2d Cir. 2009) (summary order). Indeed, such immunity covers not only the official enactment of legislation, but also activities like legislators "[m]eeting with persons outside the legislature . . . to discuss issues that bear on

29

potential legislation" or reaching "agreements . . . regarding" legislative decisions "preceding the actual vote." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007).

These cases demonstrate that the Individual Defendants' decision to put the zoning change to a vote, to refer the proposed amendment to the Planning Board, to defer that decision to receive further input from the Planning Board, and ultimately to enact the change to the Yorktown Zoning Code are all legislative actions for which the Individual Defendants would be entitled to legislative immunity. *See Roman v. Elite Towers, L.P.*, No. 24-CV-08910, 2026 WL 546404, at *4 (E.D.N.Y. Feb. 26, 2026) (explaining "[l]egislative immunity extends to casting a vote on a resolution or bill" and holding that it applied to the vote to exempt a proposed development project from zoning requirements). Each of these actions is ordinary—and collectively are core "steps in the legislative process," and therefore are legislative "in form." *Rowland*, 494 F.3d at 89. The Court is also persuaded that the kind of general zoning challenge—applicable to the entire Town of Yorktown, forward-looking, and not individually tied to Plaintiff's application (even if the concerns the law addressed were spurred by that application)—is sufficiently reflective of "discretionary, policymaking decisions implicating . . . the services the [Town] government provides to its constituents," to be legislative in substance, at least on the facts alleged in the Complaint. *Id.* at 89 (alterations adopted); *see also Anderson Grp., LLC*, 557 F. Supp. 2d at 345 (holding that downzoning of a region "was a purely legislative act" but that "action[s] taken on the [plaintiff's] special use permit by the [defendant-b]oard [were] administrative in nature . . . [even though they] had implications for the public at large"); *S. Lyme Prop. Owners Ass'n, Inc.*, 539 F. Supp. 2d at 559 (concluding that decision-making by commission as to enforcement priorities, where the commission members were not involved in

"the application of the challenged regulations to a particular property," was a legislative act entitled to immunity).[11]

In its Opposition Brief, (Pl.'s Opp'n 15–16), Plaintiff relies on a Fourth Circuit case, *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983). However, the Court is not persuaded that *Scott* is analogous to the facts alleged here. In *Scott*, the Fourth Circuit concluded that a county council was not entitled to legislative immunity in connection with zoning decisions. *Scott*, 716 F.2d 1409 at 1423. It reached this conclusion because the individual councilmembers took actions "outside the Council members' range of legitimate legislative duties," *id.*, that veered into "unlawful intervention into . . . the [administrative permit] issuance process," *id.* at 1419, which, under state law, there was no authority for their involvement in, *id.* at 1423 n.22. The defendants' actions resulted in a moratorium on building permits that was limited to "the area of [the plaintiff's] project." *Id.* at 1413; *see also The Anderson Grp., LLC*, 557 F. Supp. 2d at 344 (describing "the denial of legislative immunity for the individual legislators" in *Scott* as "premised on their issuance of a special use permit 'freeze' as to lands they were in the process of rezoning, which put a moratorium on the issuance of such permits").[12] Subject to some limitations described below, the Court concludes that "[n]o such direct administrative action on the part of the [Individual Defendants] is alleged here." *Id.* There is not, for instance, an

---

[11] To the extent Plaintiff argues that "allegations that the Town Board members targeted this particular Project and changed the Zoning Code to outlaw this use . . . means that their role was not legislative," (Pl.'s Opp'n 16), Plaintiff is stymied by the principle that "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity, regardless of an official's motive or intent." *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 27 (S.D.N.Y. 2022) (citations omitted).

[12] Indeed, in *Scott,* a state court concluded that there was "no legal basis for the intrusion by the County Council into the zoning certificate and building permit process." *Scott*, 716 F.2d at 1413. Here, by contrast, the Town Board enacted a piece of local legislation, and there is no argument that the Board would not have the authority to enact local land use laws.

allegation that the Town Board members undertook actions that were decidedly outside of their remit. *See id.* (*See generally* Compl.)  Indeed, the defendants in *Scott* issued a moratorium that was, by its very nature, limited to the area of the plaintiff's project. *Scott*, 716 F.2d at 1413.  By contrast, the Individual Defendants in this case are alleged to have enacted a Town-wide restriction that established "neutral, prospective rules that apply to all current and future owners of the [P]roperty," or indeed, *any* property within the Town. *Biblia Abierta*, 129 F.3d at 904.  In other words, the allegations related to the Board's adopting the described zoning change resemble the traditional exercise of legislative authority—the creation of neutral, prospective rules through the ordinary legislative channel, even if it directly and immediately affected Plaintiff's use of the Property—rather than the exercise of administrative authority. *See The Anderson Grp., LLC*, 557 F. Supp. 2d at 344.

Accordingly, the only above-described instances that might plausibly both involve the Individual Defendants and fall beyond the ambit of legislative immunity are the unspecified "Town officials['] attempt[] to . . . compel the Building Inspector to change his Determination," (Compl. ¶¶ 37–38), the correspondence between Defendant Siegel and a town resident, (*id.* ¶ 78), and the public blog post by an unidentified Town Board member, (*id.* ¶ 88).  For the purposes of deciding this Motion, the Court assumes without deciding that the Individual Defendants would not be entitled to absolute immunity for any claims based upon these alleged actions.

The Court declines to reach the question of whether the John and Jane Doe Defendants would be entitled to immunity, because it is unclear what, exactly, the John and Jane Doe Defendants are alleged to have done in connection with the events described.  (*See* Compl. ¶ 20 ("Defendants John and Jane Does 1–20 are unidentified persons, the names being fictitious, but are intended to represent persons who are employees, board members, agents, and attorneys or

32

others who may have participated in or conspired with the named Defendants regarding the actions set forth in this Complaint and will be appropriately added as named Defendants later.")).

Accordingly, all claims against the Individual Defendants are dismissed on the basis of legislative immunity, except those that involve the limited facts described above—the attempt "to . . . compel the Building Inspector to change his Determination," the correspondence, and the public blog post. (*See* Compl. ¶¶ 37–38, 78, 88.) The remaining allegations that relate to the Individual Defendants fail to state an individual capacity claim because they plainly involve legislative activities.

### 2. Due Process Claims

The first count of Plaintiff's Complaint is a violation of its right to due process under the Fifth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 124–25.) To state such a claim, a plaintiff must demonstrate (1) "a valid property interest in the granting of" the application, and (2) the defendants' "infring[ing] on that property interest in an arbitrary or irrational manner." *Clubside v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006). Moreover, when deciding "a substantive due process claim in a case such as this, that involves questions of local land-use management, the Second Circuit has been 'mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the Circuit's many local legislative and administrative agencies.'" *Schubert*, 775 F. Supp. 2d at 705–06 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir. 1995)) (alterations adopted); *see also Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 237 (E.D.N.Y. 2009) ("While Section 1983 is often used as a vehicle to challenge local land use decisions, federal judicial review of these decisions is extremely deferential.").

Under the first prong of the due process inquiry, courts apply "a 'clear entitlement' analysis to determine whether a landowner has a constitutionally cognizable property interest in the benefit sought." *Clubside*, 468 F.3d at 152 (discussing *Bd. of Regents v. Roth*, 408 U.S. 564 (1972)).  The entitlement derives "from independent sources, such as state law." *Schubert*, 775 F. Supp. 2d at 706.  The plaintiff must demonstrate "more than an abstract need or desire" for the sought-after "property interest in a benefit," or, in other words, "more than a unilateral expectation" of the benefit.  *Roth*, 408 U.S. at 577.  Rather, the expectation must be "a legitimate claim of entitlement to it."  *Id.*  In the context of land-use benefits, "the Second Circuit [has] held that a landowner has a clear entitlement to the land-use benefit sought where, 'absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" *Pappas*, 2010 WL 466009, at *4 (quoting *Yale Auto Parts v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985)).  In practice, this inquiry requires the Court to consider "the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." *Clubside*, 468 F.3d at 153; *see Zahra*, 48 F.3d at 680 (same); *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989) ("Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case.").  If the meaning of the law is uncertain, or the issuing authority had discretion to withhold the sought-after benefit, then the plaintiff cannot state a viable claim.  *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) ("Uncertainty as to the meaning of the applicable law defeats a claim to a clear entitlement."); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 n.1 (2d Cir. 1999) ("[T]he plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding

34

his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case."). This analysis applies unless the benefit—i.e., the permit—"has already been granted," at which point it is "unquestionably" the recipient's property. *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 334 (E.D.N.Y. 2010) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995).

Accordingly, the Court's analysis begins with a determination of whether Plaintiff has demonstrated a "clear entitlement" to the construction of the Project. "Because the [United States] Constitution generally does not create property interests, this [C]ourt, in applying the entitlement test, looks to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine.'" *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998)). Therefore, the Court looks first to the relevant portion of the Town's zoning ordinances and applicable state law to determine what law governs Plaintiff's asserted property interest. *See, e.g.*, *RRI Realty Corp.*, 870 F.2d at 918–19 (beginning the relevant analysis by examining the degree of discretion conferred on the defendants under the defendant-village's code).[13]

---

[13] Plaintiff repeatedly asserts that it had a "clear expectation of its ability to develop [the] Project," because, *inter alia,* it has alleged that the Project fell under an as-of-right use. (Compl. ¶¶ 95, 104, 107–08.) This allegation, on its own, is insufficient, because it is a conclusion of law. To survive a Motion to Dismiss, Plaintiff would need to allege facts that, taken as true, support the *legal conclusion* that it would be able to construct its project as-of-right. *See Cole v. Town of Esopus*, 47 N.Y.S.3d 634, 641 (Sup. Ct. 2016) ("The question whether the proposed facility is a 'convalescence home' is primarily a question of law . . . ."); *Cath. Charities of Roman Cath. Diocese of Syracuse v. Zoning Bd. of Appeals of City of Norwich*, 590 N.Y.S.2d 918, 920 (App. Div. 1992) ("The interpretation of the statutory import of the zoning ordinance and whether petitioner's use is a permitted use is a question of law."); *Levy v. Congregation Beth*

35

### a. Applicable State and Local Law

### i. Building Inspector Authority

The Court begins with an examination of the Inspector's authority under Yorktown's Town Code. That Code provides that the "Building Inspector shall," *inter alia*, "administer and enforce all the provisions of the Zoning Ordinance . . . and all other laws, ordinances and regulations applicable to the use of land and construction, . . . and the location, use, occupancy and maintenance thereof." Yorktown N.Y., Code § 15-3. Among the Inspector's enumerated powers are the ability "[t]o receive, review, and approve or disapprove applications for building permits," and "[u]pon approval of such applications, to issue building permits, certificates of occupancy and operating permits" and to include in those permits "such terms and conditions as the . . . Inspector may determine to be appropriate." *Id.* §§ 15-4(A), 15-4(B). The Code also provides that the "Inspector *shall* issue a building permit if the proposed work is in compliance with . . . all relevant requirements of the Code of the Town of Yorktown and Chapter 300, entitled 'Zoning.'" *Id.* § 15-4(F).

### ii. Board of Appeals Authority

The Zoning Code permits, "on request from any official or agency of the Town," an appeal to the Zoning Board of Appeals, which has the authority to "decide any question

---

*Sholom*, 42 N.Y.S.2d 891, 893 (Sup. Ct. 1943) ("Here, a pure legal question is involved—the construction of a building zone ordinance. No question of fact is presented."). Mere "conclusions" of law "are not entitled to the assumption of truth," but rather, those conclusions "must be supported by factual allegations" to support a viable claim. *Iqbal*, 556 U.S. at 679; *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("Appellants' general and conclusory allegation, without more, that they were denied 'a prompt administrative hearing' [in violation of their right to Due Process] does not meet the requisite standard for pleadings in a § 1983 action.").

involving the interpretation of any provision of this chapter." *Id.* § 300-201(A). The manner and time for taking such appeal is "prescribed by the Board of Appeals by general rule." *Id.* § 300-202.

### iii. Special Use Permits

Article Seven of the Yorktown Zoning Code establishes the procedures for Special Use Permits. *See generally* Yorktown N.Y., Code Art. VII. The Code explains that the "special uses for which conformance to additional standards [are] required by this chapter," shall be considered "permitted uses in their respective districts," so long as the additional standards and requirements of the Chapter are satisfied. *Id.* § 300-28. "All such uses are declared to possess characteristics of such unique and special forms that each specific use shall be considered as an individual case." *Id.* The Zoning Code also explains that any application for "required special permits shall be made to the Town Board, Zoning Board of Appeals or Planning Board." *Id.* § 300-30; *see also id.* § 300-201(C) ("[T]he Board of Appeals, Planning Board or Town Board, as provided for herein, may authorize the issuance of permits for special uses in districts in which such uses are permitted.").[14] The Zoning Code further provides that the "Zoning Board of Appeals may refer to the Town Planning Board, for report, any special permit application." *Id.* § 300-31.

---

[14] This provision of the Yorktown Code governs in lieu of the general New York Town Law cited by Plaintiff. (*See* Pl.'s Opp'n 23.) The law cited by Plaintiff provides that "*[u]nless otherwise provided by local law or ordinance*, the jurisdiction of the board of appeals shall be appellate only and shall be limited to hearing and deciding appeals from and reviewing any order, requirement, decision, interpretation, or determination made by the administrative official charged with the enforcement of any ordinance or local law adopted pursuant to this article. Such appeal may be taken by any person aggrieved, or by an officer, department, board or bureau of the town." N.Y. Town Law § 267-a(4) (emphasis added). Here, as described above, a "local law or ordinance" "provides otherwise." *Id.*

### iv. Planned Light Industry Requirements

Plaintiff asserts that the portion of the Code applicable to "Light Industry" uses governs the Project Applications. (*See, e.g.*, Compl. ¶ 31.) This section appears within the "Special Use Permits" portion of the Yorktown City Zoning Code. Yorktown N.Y., Code § 300-94. A subset of the "Light Industry" uses section explains, first, that the "site plan of development [must be] approved by the Planning Board, after public notice and hearing." *See id.* Prior to its amendment, the Zoning Code had two sections that, Plaintiff alleges, governed the approval of recycling facilities, § 300-81.2 and § 300-94C(10). (Compl. ¶ 69.) These were the Sections of the Code that, Plaintiff claims, the Town Board eliminated in response to its Application. (*Id.* ¶ 69.) Unfortunately, neither Party has provided the text of these sections to the Court, and they are no longer generally available in official copies of the Town Code since their repeal.

The Parties appear to concede that another, unrepealed portion of the code entitled "Bulk requirements," applies here. That section provides that, except in certain circumstances not relevant here:

> A. No building shall be located at a distance less than 75 feet from the street on which the building fronts, except that gatehouses, bus stop shelters and security offices one story in height may be located at a distance not less than 30 feet from the street or road, and no building shall be located at a distance less than 200 feet from a boundary which adjoins any residence district or less than 100 feet from all other boundaries of the lot.
> B. All buildings on any lot shall not cover in the aggregate more than 20% of the area of the lot, and no buildings shall exceed two stories or 30 feet in height.

Yorktown N.Y., Code § 300-97.

Finally, the Code states that "No building permit or certificate of occupancy for any building designed for business, industrial or office use within a planned light industry district shall be issued, except in accordance with a plan of development or amendment thereof approved by the Planning Board." *Id.* § 300-102.

38

With these local Code provisions thus described, the Court considers whether Plaintiff has demonstrated its "clear entitlement" to construct the Project—either in its initial form or in the Alternative Layout—on the facts alleged in the Complaint and included in documents properly before the Court at this stage.  As set forth below, Court discerns at least two legal impediments to the conclusion that Plaintiff was "clearly entitled" to complete the Project on the facts described.

### b. Vested Property Interest

#### i. The Setback

Under the layout proposed in Plaintiff's initial Application, the Building would lie with a "100-feet setback [from] the easterly Property line."  (Compl. ¶ 34.)  In their Memorandum of Law, Defendants claim that "[i]t is undisputed that the Property's eastern boundary adjoins a district that is zoned for residential use, albeit a district in another town."  (Defs.' Mem. 20; *see also* Reply 9 ("Plaintiff cannot . . . satisfy the first requirement . . . because the proposed recycling center was not set back at least 200 feet from the boundary of the adjoining residential district . . . .").)  They therefore argue that the Due Process claim should be dismissed for non-compliance with the Yorktown Code, which would require a 200 foot setback.  (*See* Defs.' Mem. 20.)  But Plaintiff's Complaint contains no allegation as to the zoning status of the neighboring district.  (*See generally* Compl.)  Instead, Plaintiff claims that the "adjacent property is not being used for residential purposes but is being used for commercial purposes . . . ."  (*Id.* ¶ 45 n.1.)  This allegation, although it describes the *use* the neighboring property is currently put towards, does not describe the *zoning* status of that property: the City's zoning code appears to provide that the appropriate setback is determined by the zoning status of the district.  *See* Yorktown N.Y., Code, § 300-5 (describing "classes of districts" including "General district, residence");

§ 300-97 ("[N]o building shall be located at a distance less than 200 feet from a boundary which adjoins any residence district.").[15]  In many towns (including Yorktown), "commercial" activity may be permissible even in a district that is zoned for residential use.  *See id.* at § 300-76 (describing uses permitted in "existing residential structure[s]" including "professional offices and/or studios of an architect, artist, chiropractor, dentist, engineer, insurance broker, lawyer, optometrist, osteopath, physician, planner, public accountant, real estate broker, speech therapist, surveyor, veterinarian and/or similar professional uses"); *Sabrina Corp. v. Jones*, No. 88-CV-2189, 1989 WL 1328, at *2 (E.D.N.Y. Jan. 5, 1989) (noting that "[the] plaintiff's new site was located near property zoned for residential use, although used for commercial purposes").  Thus, the mere allegation that the adjacent property was being put to commercial use does not exclude the possibility fact that it may have been *zoned* as a "residence district"—in other words, it is not an allegation as to that lot's zoning status.  Plaintiff's Complaint contains no further allegations as to the adjacent property's zoning status.  (*See generally* Compl.)  Without even reaching the second-order question whether additional approvals would have been necessary for Plaintiff to be able to develop its Project, the Court cannot infer that—as Plaintiff claims—its Project clearly should have been approved with its initial proposed layout that incorporated a 100-foot setback.

---

[15] The Court may consider the relevant portions of Yorktown's Municipal Code cited herein, as they are properly subject to judicial notice.  *See Figuereo v. City of Saratoga Springs*, No. 23-CV-00922, 2025 WL 460784, at *20 n.19 (N.D.N.Y. Feb. 11, 2025) (taking judicial notice of city charter and collecting cases taking notice of a county resolution and a municipal law); *Gugino v. Erie Cnty.*, No. 21-CV-01319, 2024 WL 3510306, at *7 n.5 (W.D.N.Y. July 18, 2024) (taking judicial notice of a county code), *on reconsideration on other grounds*, 2024 WL 4110828 (W.D.N.Y. Sept. 6, 2024); *Trisvan v. Biden*, No. 21-CV-5684, 2022 WL 3019862, at *3 (E.D.N.Y. July 30, 2022) (taking judicial notice of municipal act lifting earlier municipal mandate); *Fair v. Esserman*, No. 15-CV-681, 2015 WL 7451154, at *4 (D. Conn. Nov. 23, 2015) (explaining there is "no question" that the court "may take judicial notice of a municipal charter" and citing cases taking judicial notice of a county resolution and a municipal law).

(*See* Pl.'s Opp'n.)  Defendants have identified a portion of the Town Code that may have applied to Plaintiff's application, such that it could not be built without a zoning variance.  *See Franco v. Siry*, No. 22-CV-4674, 2024 WL 2701646, at *8 (E.D.N.Y. May 24, 2024) (rejecting Fourteenth Amendment selective enforcement claim where the plaintiff "ha[d] not pleaded whether the other properties sit in the same zoning district and are therefore subject to the same zoning restrictions"); *Mindale Farms Co.*, 2024 WL 1209906, at *5 (explaining that the plaintiff could not sustain a takings claim where the plaintiff's allegations did not support the conclusion that the parcel of land at issue was "zoned as" the type of district which, the plaintiff admitted, was the "only feasible" zoning status which would have permitted the plaintiff's desired use); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018) ("[T]he complaint fails to identify how the property is actually zoned and what uses are permitted under its current classification.").

Plaintiff further contends that it had a "clear expectation of its ability to develop [the p]roject" in light of the Inspector's Determination which, it says, concluded that Plaintiff "did not need to comply with a 200 foot setback" from the property line.  (Compl. ¶¶ 107–08.) However, as described above, the Inspector's determination—which Plaintiff does not contest is the same document as that described in its Complaint, (*see generally* Pl.'s Opp'n)—does nothing of the sort.  Instead, it reports back to the Planning Board that the Inspector "completed a preliminary review" of the Property and "offer[s]" three comments, none of which relate at all to the setback issue.  (*See* Ex. C at 2.)  This document offers no indication of the Inspector's "approval" of the Plan.  (*Id.*)  And it certainly prevents the Court from concluding that the benefit—i.e. the permit or other permission that would allow Plaintiff to develop—"ha[d] already been granted" when it issued.  *Soundview Assocs.*, 725 F. Supp. 2d at 334.

41

The Court further observes that the existence of an unsettled state law dispute would prevent Plaintiff from stating an entitlement to relief under the Due Process clause based solely on its initial Application.  *See Cunney v. Bd. of Trs. of Vill. of Grand View*, 56 F. Supp. 3d 470, 494 (S.D.N.Y. 2014) (explaining that legal uncertainty is one of two conditions that will defeat a claim to clear entitlement); *Pansy Rd., LLC v. Town Plan & Zoning Comm'n of Town of Fairfield*, No. 05-CV-916, 2007 WL 2889456, at *2 (D. Conn. Sept. 29, 2007) ("This uncertainty [as to the meaning of the relevant state court decision] prevents plaintiff from establishing that it had a clear entitlement to approval of the proposed [project]." (citing *Natale*, 170 F.3d at 263–64 and *O'Mara*, 485 F.3d at 700)).[16]  Therefore, unless Plaintiff alleges facts that, without a doubt,

---

[16] The Court notes that in its Complaint, Plaintiff appears to take the position that the municipal regulation can apply only where the "residence district" is one within the borders of the City.  (Compl. ¶ 45 n.1.)  It is true that a municipality's jurisdiction is "confined to the territorial limits of the city," and its council or board has "no authority to legislate to affect lands beyond the territorial limits of the city" or municipality.  *In re City of Rochester*, 171 N.Y.S. 12, 14 (App. Div. 1918), *aff'd*, 121 N.E. 859 (N.Y. 1918).  But the Town's zoning rules do not reach any property beyond its border: the Town does not purport to regulate land in the neighboring town, but only property within the Town that may border the property of another town, and Plaintiff does not argue that any part of its land falls outside the limits of Yorktown.  Although a municipality's authority to govern ends at its territorial limits, it does not necessarily follow that, in the exercise of that authority, the municipality would have to shut its eyes to facts beyond its territorial limits—including the status of the land use of a lot that abuts the municipality's borders.  Indeed, to the extent that New York courts have considered such questions, it seems the opposite is true: "[w]hile it is true . . . that [a municipality] cannot control the use of land outside its borders, it cannot in zoning land within its borders ignore the outside uses."  *Chusud Realty Corp. v. Vill. of Kensington*, 243 N.Y.S.2d 149, 154 (Sup. Ct. 1963), *aff'd*, 255 N.Y.S.2d 411 (App. Div. 1964); *see similarly People v. Jabaar*, 623 N.Y.S.2d 500, 504 (Just. Ct. 1994) ("It is not enough that the Village law may incidentally affect [the regulated activity] beyond the Village's geographical borders. . . . The defendant claims that the Village requires the entire world to be licensed by the Village in order for it to [engaged in the regulated activity] within the Village.  If this is true, however, the Village is not exceeding its authority by making such a requirement.").  And no Party has pointed the Court towards any authority suggesting that Defendants or the Town have established any special rules for lots abutting other municipalities.

support the conclusion that it would need to comply with only a 100-foot setback, the disputed setback distance precludes it from raising a Due Process claim based on its initial Application.

### ii. The Special Use Permit

The Court also determines that Plaintiff has not demonstrated that it was clearly entitled to a special use permit because the relevant local ordinances appear to impart discretion on the Defendants in the issuance of such permits. A plaintiff asserting a Due Process Clause claim based on property development issues like those described here "is not entitled to relief sought where 'the local regulator has discretion with regard to the benefit at issue.'" *DeMunn v. Sheepdog Warrior LLC*, No. 19-CV-1517, 2020 WL 6318221, at *5 (N.D.N.Y. Oct. 28, 2020) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994)); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 504–05 (2d Cir. 2001) (holding that because a zoning board had the power to "grant and deny special use permits," the plaintiff lacked a cognizable property right); *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir. 1996) (dismissing plaintiff's due process claim because the Zoning Board had the authority to grant variances); *Cunney*, 56 F. Supp. 3d at 493 (explaining that "a protected property interest does not exist where a local authority has discretion to deny the application on non-arbitrary grounds"). This rule emerges because, to sustain a due process claim, the plaintiff must demonstrate its "entitlement to a benefit[, which] arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit." *Soundview Assocs.*, 725 F. Supp. 2d at 334 (internal quotation marks omitted).

On the facts alleged here, and without the benefit of the text of the now-repealed provisions of the zoning code, the Court cannot determine that Plaintiff was clearly entitled to a special use permit to construct the Project, even under the Alternative Layout. (*See* Opp'n 21,

43

25.) It appears from the Complaint and materials properly before the Court at this juncture that Plaintiff's Project—regardless of which proposal it was set to follow—required a Special Use Permit from the Town to be constructed. *See generally* Yorktown N.Y., Code Art. VII. And, under the Zoning Code, each such use was to be "considered as an individual case" and under terms and conditions imposed by the relevant Town decisionmakers. *Id.* § 300-28. Moreover, the requisite special use permit for such construction required approval by the "Planning Board, after public notice and hearing." *Id.* § 300-94. And the code conferred on the "Board of Appeals, Town Board, or Planning Board" the ability to "attach such conditions and safeguards to the special permit as are necessary to ensure continued conformance to all applicable standards and requirements." *Id.* § 300-34. Accordingly, it appears that the municipal officials at issue here retained the discretion to impose requirements on the issuance of any special use permit, and to consider all such permits on an individual basis and approve or deny them accordingly, thus undercutting Plaintiff's claim to an entitlement to the special use being sought. *See, e.g.*, *RRI Realty Corp.*, 870 F.2d at 918–19 (no property interest existed in building permit because town officials had discretion to either grant or deny the permit); *Martinez v. Town of Clarkstown*, No. 23-CV-5364, 2024 WL 4124717, at *3 (S.D.N.Y. Sept. 9, 2024) ("Accordingly, because the issuance of the short-term rental permit was a discretionary process, Plaintiff cannot be said to have had a property interest in the permit that required protecting."); *Pioneer-Evans Co. v. Garvin*, 595 N.Y.S.2d 586, 587 (App. Div. 1993) ("The decision to deny an application for a special use permit is discretionary . . . .").

While it might be the case that Plaintiff could demonstrate an entitlement to the Special Use Permit under the since-repealed special provisions that applied to recycling facilities, Plaintiff has not provided a copy of those provisions, quoted from them, or even described their

substance in its Complaint.  (*See generally* Compl.)  The Court cannot credit Plaintiff's legal

conclusion that it had such an entitlement, particularly in light of the generally applicable

provisions of the Zoning Code that suggested that the decision to issue any special use permit

was discretionary.  *See Iqbal*, 556 U.S. at 679 (holding that legal conclusions "are not entitled to

the assumption of truth," but rather those conclusions "must be supported by factual allegations"

to support a viable claim).[17]

Accordingly, Plaintiff has failed to demonstrate a "clear entitlement" to develop the

Project.[18]

---

[17] These deficiencies likewise preclude, at least on the facts alleged in the Complaint, the applicability of the "special facts exception" doctrine cases that are cited in Plaintiff's Opposition Brief to the initial Application.  (*See* Pl.'s Opp'n 20–21.)  There is a general principle in New York law that, in zoning disputes, the law as it exists at the time a decision is rendered on appeal is controlling, which is subject to an exception called the "special facts" exception. *D'Agostino Bros. Enters., Inc. v. Vecchio*, 786 N.Y.S.2d 90, 91 (App. Div. 2004).  That exception requires "proof of 'special facts' that indicate that the local government acted in bad faith in delaying a landowner's application for a building permit while the zoning law was changed."  *Soundview Assocs.*, 725 F. Supp. 2d at 335.  However, to be subject to this exception, the petitioner must "demonstrate[] that he was entitled to a permit as a matter of right by full compliance with the requirements at the time of the application and that proper action upon the permit would have given him time to acquire a vested right before the zoning ordinance was amended."  *Id.* (citing *Pokoik v. Silsdorf*, 358 N.E.2d 874, 876 (N.Y. 1976)).  Thus, the same deficiencies that prevent the Court from determining that Plaintiff showed its "clear entitlement" such that it would satisfy the Fourteenth Amendment analysis prevent too the Court from concluding that the special facts exception would apply: it is not clear that Plaintiff "was entitled to a permit as a matter of right by full compliance with the requirements" as to the initial Project proposal.  *Id.*

[18] Plaintiff also takes the position that it has demonstrated "clear entitlement" to develop the Project because, it maintains, the Planning Board's involvement was improper.  (*See* Opp'n 21–22.)  The Court disagrees.  The Planning Board's involvement is expressly contemplated by Yorktown's Zoning Code.  *See, e.g.* Yorktown N.Y., Code § 300-34 (providing the "Board of Appeals, Town Board, or Planning Board" with the ability to "attach such conditions and safeguards to the special permit as are necessary to ensure continued conformance to all applicable standards and requirements").

Plaintiff appears to believe that New York State law precludes a Planning Board, even when properly involved, from making *any* interpretation of local zoning ordinances.  (*See* Opp'n 22–23.)  But New York courts have considered cases where municipal planning boards were

45

c. Arbitrary or Irrational Action

The second step of the Due Process Clause analysis asks whether the plaintiff has shown

that the defendant "infringed [its property] interest in an arbitrary or irrational manner."

*O'Mara*, 485 F.3d at 700; *see also Cunney*, 56 F. Supp. 3d at 493 (same). As the Court has

---

involved in site plan and special use permit application determinations that required those boards
to make determinations of law and have not found the practice inherently objectionable. *See,
e.g.*, *Shop-Rite Supermarkets, Inc. v. Plan. Bd. of Town of Wawarsing*, 918 N.Y.S.2d 647, 650–
51 (App. Div. 2011) (where planning board was involved in application approval, "accord[ing]
great deference to a planning board's interpretation of a zoning ordinance," concluding that the
planning board's interpretation was reasonable and refusing to annul approval given to a
company); *Cady v. Town of Germantown Plan. Bd.*, 126 N.Y.S.3d 543, 546 (App. Div. 2020)
("A planning board, however, will not be required to refer a matter to a zoning board for a
superfluous interpretation of an unambiguous provision contained in the zoning code."). There
is no basis to conclude that the mere fact of a Planning Board's raising a legal issue and referring
that question to the appropriate decisionmaker constitutes a violation of Plaintiff's rights. *See
also DeMunn*, 2020 WL 6318221, at *6 (explaining the background provision that permits
"allowing towns to delegate the authority to approve special use permits to planning boards" and
citing *Matter of Layne*, 918 N.Y.S.2d 398, 398 (Sup. Ct. 2008)).

And in any event, the Yorktown Zoning Code empowers the Zoning Board of Appeals to
resolve disputes as to the meaning of the applicable zoning laws, a power it exercised here. *See
O'Malley v. Town of New Windsor Plan. Bd.*, 212 N.Y.S.3d 126, 128 (App. Div. 2024)
("[P]etitioners were required to challenge the determination of the Planning Board Engineer
before the Zoning Board of Appeals."), *leave to appeal denied*, 248 N.E.3d 776 (N.Y. 2024);
*Catskill Heritage All., Inc. v. Crossroads Ventures, LLC*, 77 N.Y.S.3d 728, 731 (App. Div. 2018)
(explaining that, when confronted with an ambiguity in the zoning code, the zoning board of
appeals must "deal[] with" the claim "first," and in the interim the "Planning Board lack[s]
authority to approve any application"). Unlike the cases cited by Plaintiff, there is no allegation
of facts here that would support the conclusion that the Planning Board usurped the interpretative
role of the Zoning Board of Appeals, nor do the materials before the Court support the
conclusion that any such dispute was untimely raised. *See Gershowitz v. Plan. Bd. of Town of
Brookhaven*, 417 N.E.2d 1000, 1001 (N.Y. 1980) (reasoning that, once the Zoning Board of
Appeals issued a special use permit to petitioner, the town Planning Board was "without power
to disapprove petitioner's site plan on the ground that petitioner's use violated the . . . Town
Code"); *E. Moriches Prop. Owners' Ass'n, Inc. v. Plan. Bd. of Town of Brookhaven*, 887
N.Y.S.2d 638, 640–41 (App. Div. 2009) (rejecting argument that, in approving site plan,
planning board "necessarily made an implicit interpretation of the zoning code" and therefore
acted beyond its authority); *Jamil v. Vill. of Scarsdale Plan. Bd.*, 808 N.Y.S.2d 260, 261 (App.
Div. 2005) (rejecting attempt to challenge building inspector's determination based on actions of
planning board, where challenge was untimely raised, permit had already been issued, and Board
"was without authority to deny the approvals sought" under municipal law).

determined that Plaintiff has not demonstrated that it was "clearly" entitled to the approval of its

permit on the facts alleged, it does not reach the second step of the due process analysis.  *See*

*Cunney*, 56 F. Supp. 3d at 495–505 (dismissing due process claim due to absence of vested

property interest).[19]

### 3. First Amendment Retaliation

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right

protected by the First Amendment; (2) the defendant's actions were motivated or substantially

caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused him some

injury."  *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *see also Novick v. Vill. of*

*Wappingers Falls*, 376 F. Supp. 3d 318, 331 (S.D.N.Y. 2019) (same).  The second element may

be established "through direct evidence of retaliatory animus or through indirect evidence that

'the protected activity was closely followed in time by the adverse action.'"  *Giglio v. Derman*,

560 F. Supp. 2d 163, 175 (D. Conn. 2008) (quoting *Reed v. A. W. Lawrence & Co.*, 95 F.3d

1170, 1178 (2d Cir. 1996)); *see also Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) ("A plaintiff

can establish the causal connection between protected expression and [the adverse action]

indirectly by showing that the protected activity was followed by [the adverse action], or directly

by evidence of retaliatory animus." (quotation marks omitted)); *Siracusa v. New Hyde Park-*

*Garden City Union Free Sch. Dist.*, No. 24-CV-01002, 2025 WL 948115, at \*10 (E.D.N.Y. Mar.

28, 2025) (noting that causation may be demonstrated through a direct showing of animus or

---

[19] To the extent that Plaintiff complains about not having the opportunity to develop a record at the Zoning Board hearing, (*e.g.* Pl.'s Opp'n 7), the Court notes that "[t]he deprivation of a procedural right to be heard . . . is not actionable when there is no protected right at stake." *Gagliardi*, 18 F.3d at 193.  Because Plaintiff's complaint does not allege a clear entitlement to develop, this claim, too, fails.

indirectly through a showing of protected activity followed closely by adverse action); *Mule v. Dep't of Educ. of City of New York*, 797 F. Supp. 3d 9, 39 (E.D.N.Y. 2025) (same). "In land-use regulation cases such as this one, Second Circuit authority recognizes a constitutional claim if an individual petitions a government for relief, and the government retaliates against the individual for having done so." *Reardon v. Keating*, 980 F. Supp. 2d 302, 316 (D. Conn. 2013) (citing *Dougherty v. Town of North Hempstead Bd. of Zoning*, 282 F.3d 83 (2d Cir. 2002), and then citing *Gagliardi*, 18 F.3d at 188).

As to the first element, protected activity, Plaintiff alleges that an employee of Plaintiff "was vocal in his opposition to the Town Board's refusal to award the waste hauling contracts" to AAA Carting, and posted on a social media platform about this issue. (Compl. ¶ 97.) Speech by private individuals "on matters of public concern" falls within "the core of First Amendment protection." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 600 (2008); *see also Snyder v. Phelps*, 562 U.S. 443, 451–452 (2011) ("Speech on matters of public concern is at the heart of the First Amendment's protection." (quotation marks and citation omitted, alterations adopted)); *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 953 F.3d 216, 220 (2d Cir. 2020) ("[S]ocial media users employ these websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought." (quoting *Packingham v. North Carolina*, 582 U.S. 98, 105 (2017)), *abrogated in part on other grounds by Lindke v. Freed*, 601 U.S. 187 (2024)). The Court readily concludes that Plaintiff has satisfied the "protected speech" element of its retaliation claim by referencing these comments. *See Reardon*, 980 F. Supp. 2d at 316 (concluding that the plaintiffs' complaints about construction were "clearly" constitutionally protected speech). Plaintiff also cites unspecified "litigation" in New York State Court. (*Id.* ¶¶ 22, 39.) Even a cursory search for the relevant state court proceedings yields *AAA Carting*

48

*and Rubish Removal Inc. v. The Town of Yorktown*, No. 56419/2023 (N.Y. Sup. Ct.) (Dkt. No. 1), a proceeding of two consolidated cases that involved a claim under Article 78 based on compliance with the trash-hauling bids described above, which was not terminated in AAA Carting's favor, but rather terminated on the basis of mootness.  Nevertheless, the Court will assume that the lawsuit may constitute protected speech for the purposes of deciding this Motion. *See Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006) (treating lawsuit by owner of nursing home as protected speech).[20]  These two allegations are the only facts described in the complaint that both (1) constitute protected speech and (2) predate the alleged series of zoning decisions challenged by Plaintiff.  They therefore serve as the basis upon which the retaliatory motive for the subsequent course of conduct must rest.  *See Reardon*, 980 F. Supp. 2d at 316 ("If the Town [d]efendants' post-complaint acts demonstrate a continuing course of conduct in which an intent to retaliate against [the p]laintiffs plays no discernible part, a claim for retaliation is not alleged."); *Musco Propane, LLP v. Town of Wolcott*, No. 10-CV-1400, 2011 WL 3267756, at *9 (D. Conn. July 28, 2011) ("An inference of retaliatory intent would be unsupported if [one defendant] directed [another defendant] to take action before [the plaintiff] appealed . . . or, if earlier, indicated its intent to do so.").

---

[20] The Court notes, however, that at least one case suggests that, to state a viable First Amendment claim based on AAA Carting's lawsuit, Plaintiff would also need to allege that AAA Carting's lawsuit involved a matter of public concern, which it has failed to do here. *See Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 517 (E.D.N.Y. 2019) (explaining that the "public concern test applies" in situations where "the government has dual interests as a commercial counterparty and as a sovereign" such as where the plaintiff is a "licensee, franchisee, permit holder, [or] lessor" as that dual relationship necessitates a "balancing test" between the government's "interest in establishing fees, rules, and procedures for monetizing public space" and the "business' right to petition with grievances").

As to the social media posts, the Complaint "lacks facts that would allow this Court to infer that [Defendants were] even aware of the [social media posts] or [describe] how the [social media posts] motivated the alleged retaliatory actions." *Mitchell v. Kindlon*, No. 25-CV-0602, 2025 WL 1951849, at *10 (N.D.N.Y. July 16, 2025), *reconsideration denied sub nom. Mitchell v. Blain-Lewis*, 2025 WL 3136383 (N.D.N.Y. Nov. 10, 2025); *see also Bell v. Sullivan*, No. 17-CV-912, 2017 WL 5518005, at *1, 8 (E.D. Pa. Nov. 16, 2017) (dismissing First Amendment retaliation claim "arising out of the allegedly improper issuance of citations to [the plaintiff] by [a city agency] for property violations" where the facts alleged in the plaintiff's complaint "provide[] no reason to believe [the defendant] was aware" of facts related to the First Amendment protected activity); *Strategic Env't Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 113–14, 124 (D.N.J. 2016) (dismissing First Amendment claim against various state entities premised on alleged retaliatory interference with the plaintiffs' operation of a landfill where, as to multiple of the defendants, the "[p]laintiffs plead[ed] no facts that even suggest [the defendants] were aware of [the protected activity] . . . or that either [d]efendant had any motive to retaliate against [the p]laintiffs"); *Rosendale v. Brusie*, No. 07-CV-8149, 2009 WL 778418, at *10 (S.D.N.Y. Mar. 25, 2009) (dismissing First Amendment retaliation claim premised on inaccurate assessment of taxes where the complaint failed to include, *inter alia*, allegations that the individuals responsible "were even aware of [the plaintiff's] protected speech"), *aff'd*, 374 F. App'x 195 (2d Cir. 2010) (summary order). Plaintiff has cited no comments by officials—even unnamed officials—evincing a retaliatory motive. *Cf. Sanimax USA, LLC v. City of S. St. Paul*, 496 F. Supp. 3d 1285, 1293 (D. Minn. 2020) (concluding causation had been demonstrated where, among other allegations, the plaintiff's complaint "quote[d] public statements from City officials (albeit unnamed) expressing a desire to drive [the plaintiff] from the City"; "specifically

50

allege[d] that when [the plaintiff] was considering leasing a portion of a city-owned property to use as a truck repair shop, a real estate agent retained by the City to market the property 'told [the plaintiff's] representatives that he was given specific instructions from [City] officials not to sell the facility to [the plaintiff]'"; and the zoning amendment at issue specifically proscribed the plaintiff's core business without prohibiting other traditionally heavy industrial uses). Accordingly, the Complaint does not allege a causal connection between that speech and the adverse action by Defendants. *Mitchell*, 2025 WL 1951849, at *10 (dismissing claim where "the complaint lack[ed] facts that would allow th[e] [c]ourt to infer that [the defendant] was even aware" of the activity); *see also Walker v. New York State Dep't of Corr. & Cmty. Supervision*, No. 23-CV-206, 2025 WL 2753702, at *8 (N.D.N.Y. Sept. 29, 2025) ("These allegations do not plausibly allege that [the defendant] was aware of [the p]laintiff's protected speech, much less that he took an adverse action against [the p]laintiff because of that speech."); *cf. Vora v. New York City Dep't of Educ.*, No. 22-CV-10891, 2024 WL 1116312, at *11 (S.D.N.Y. Mar. 14, 2024) (dismissing Title VII retaliation claim on the basis that the complaint did not "allege[] that [the plaintiff's] supervisors were aware that she made [critical] comments" (quotation marks omitted, alteration adopted)). Where there is no basis to conclude that a causal nexus exists, a plaintiff cannot sustain a retaliation claim. *See Oberdorfer v. Jewkes*, 583 F. App'x 770, 772 (9th Cir. 2014) ("But [the plaintiff] failed to plead facts making it plausible that a retaliatory motive—as opposed to a legitimate concern for the property rights of the government—was the but-for cause of [the allegedly retaliatory] actions."); *Musco Propane, LLP*, 536 F. App'x at 40 (at summary judgment, concluding that the plaintiff did not state a claim on the basis that the sole individual who expressed retaliatory motive was not the decisionmaker as to the allegedly discriminatory action).

51

The Court notes that causation here is even further attenuated than many of the cases cited, given the facts alleged. Namely, Plaintiff is a corporation that alleges it was retaliated against on the basis of its *employee*'s speech on behalf of *another* corporation, albeit one that was affiliated with Plaintiff through some undescribed relationship, In this Court's view, this attenuated relationship standing alone may not be sufficient to preclude a finding of retaliation if it were coupled with other allegations supporting the requisite causal nexus. After all, a plaintiff may often rely on the "totality of the circumstances" to demonstrate the requisite causation. *See Perry v. Vill. of Hillburn*, No. 23-CV-11316, 2024 WL 4932528, at *4 (S.D.N.Y. Dec. 2, 2024) (examining whether totality of the allegations supported causation). But where Plaintiff has otherwise failed to provide allegations that support causation, the attenuated relationship and failure to allege "what information was published or where, [or even] . . . that the 'employee' identified himself as Plaintiff's employee" further support dismissal. (Reply 12 (emphasis omitted).)

The cited litigation suffers from effectively the same problems. That litigation did not involve Plaintiff, but another corporate entity entirely. It was terminated by stipulated dismissal of the Parties, rather than a ruling in favor of Plaintiff, due to the case becoming moot. Plaintiff does not adequately allege facts that would explain why the Town would attribute that entity's litigation to Plaintiff, and the Court has not found any precedent suggesting that such attribution is permissible. Nor has Plaintiff explained why litigation terminated due to mootness through stipulated dismissal would so enrage Defendants.

Plaintiff's complaint likewise fails to demonstrate a causal connection through temporal proximity alone. The Second Circuit has suggested that "in some cases, . . . temporal proximity might be enough to . . . give rise to an inference of causation" and sustain a retaliation claim.

52

*Musco Propane, LLP*, 536 F. App'x at 39; *see also Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1048 (W.D. Mich. 2017) (noting that causation requires an examination of the totality of the circumstances, including "temporal proximity between the protected conduct and the adverse action"). The Second Circuit has explained that, although this is not a bright line inquiry, "courts in this circuit have typically measured that gap as a matter of months, not years." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012); *see also Handsome, Inc. v. Town of Monroe*, No. 11-CV-1288, 2023 WL 2742315, at *25 (D. Conn. Mar. 31, 2023) (concluding 30-month gap too lengthy). In the Complaint, Plaintiff has not alleged *when* the comment pertaining to AAA Carting were made, or when the waste hauling bidding occurred. (*See generally* Compl.) Without allegations as to the timeline—when the comments might have been made years or even decades earlier—the Court cannot rely on temporal proximity to demonstrate causation, even on a Motion to Dismiss. *See Nelson v. Argyropoulous*, No. 18-CV-11413, 2021 WL 4352313, at *3 (S.D.N.Y. Sept. 24, 2021) ("Because Plaintiff has not set forth a time frame for his complaints, the Court cannot conclude that a close temporal proximity establishes causality."); *Amato v. Elicker*, No. 20-CV-464, 2021 WL 1428192, at *6 (D. Conn. Apr. 15, 2021) (dismissing claims where the plaintiffs "allege[d] no dates or other facts" about allegedly targeted events and did "not even allege facts suggesting that the [defendant] was aware that they had hosted these events"). And, assuming the Court has correctly identified the state court litigation referenced in the Complaint, that litigation went on for years prior to the allegedly retaliatory activity described here. Where the "First Amendment[-protected] speech occurred with great regularity for years prior to" the adverse action, "reliance on temporal proximity—as proof of causation flowing from Plaintiff's most recent speech—is improper" and the fact that "some of Plaintiff's First Amendment activity"

53

may have "occurred within weeks" of the retaliation "is not indicative of causation." *Heffernan v. Straub*, 655 F. Supp. 2d 378, 382 (S.D.N.Y. 2009); *see also Peters v. City of Torrington*, No. 24-CV-1293, 2025 WL 2223626, at *8 (D. Conn. Aug. 5, 2025) (dismissing First Amendment retaliation claim where protected activity preceded alleged retaliation "by over two years"). On the facts alleged here, there simply is not a sufficient basis to infer causation.

Plaintiff urges that the "general pattern of egregious treatment" described in its Complaint is sufficient to support a finding of retaliation, citing *Dougherty*, 282 F.3d at 91 and *Gagliardi*, 18 F.3d at 195. It is true that, on a Motion to Dismiss, it is enough to allege facts from which a retaliatory intent on the part of the defendants plausibly may be inferred. *Macera v. Village Board of Ilion*, No. 16-CV-668, 2017 WL 1194236, at *4 (N.D.N.Y. Mar. 30, 2017). So, courts have concluded that multiple failures by government officials charged with making zoning decisions to comply with "proper procedure" in the issuance of permits can provide circumstantial evidence of retaliatory motive. *Id.*; *see also Tomlins v. Vill. of Wappingers Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 373 (S.D.N.Y. 2011) (collecting cases). But cases applying that doctrine do not find causation on facts as tenuously connected as those alleged here—namely, they do not rest their causal connection on events that did not involve the plaintiff. *See, e.g., Dougherty*, 282 F.3d at 86–87, 92 (reasoning causation could be inferred based on the facts that the plaintiff applied for a permit in 1996, which was denied, but appealed, upon which point a state appeals court found the denial without a rational basis, then the plaintiff re-applied, received the permit, plaintiff sought attorney's fees for the litigation, and the permit was revoked); *Gagliardi*, 18 F.3d at 195 (finding allegations of a ten-year failure to enforce local code in the face of an "aggravated and persistent course of conspiratorial noncompliance" and "detailed allegations provid[ing] a chronology of events" sufficed to support a causal inference);

*see similarly Handsome, Inc.*, 2023 WL 2742315, at *25 n.27 (concluding that a "series of events" that involved simply an application grant, extension denial, and imposition of new requirements was "not comparable to the situation alleged in *Gagliardi*" and therefore did not support causation), *aff'd*, No. 23-711, 2024 WL 2747142 (2d Cir. May 29, 2024).

Accordingly, Plaintiff's First Amendment retaliation claim fails on the grounds that the facts alleged do not support the existence of a causal connection between Plaintiff's protected speech and the asserted retaliation.

### 4. 1985(3) Conspiracy

To state a claim for conspiracy in violation of § 1985(3), a plaintiff must allege (1) a conspiracy, (2) with the intent or purpose to deprive a person of equal protection of the law, (3) an act in furtherance of the conspiracy, (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *see also Taranto v. Putnam Cnty.*, No. 21-CV-2455, 2023 WL 6318280, at *12 (S.D.N.Y. Sept. 28, 2023) (same). "In order to maintain an action under [§] 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation and internal quotation marks omitted). "In addition, a plaintiff must allege that she is a member of a protected class and that the conspirators acted with class-based discriminatory motivation." *Arroyo-Horne v. City of New York*, No. 16-CV-3857, 2019 WL 3428577, at *5 (E.D.N.Y. July 30, 2019), *aff'd*, 831 F. App'x 536 (2d Cir. 2020) (summary order).

Defendants argue that Plaintiff's claim under § 1985(3) should fail because Plaintiff has not pled membership in a class protected under that statute. (Defs.' Mem. 26–27.) The Court

agrees.  As described, to state a claim under § 1985(3), a plaintiff must establish, among other

elements, that the conspiracy was motivated by "some racial or perhaps otherwise class-based,

invidious discriminatory animus."  *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 522

(S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-CV-11265, 2022 WL 874769

(S.D.N.Y. Mar. 24, 2022) (quotation marks omitted).  Plaintiff has not done so.  (*See* Compl.)

Indeed, it has not alleged the existence of *any* class to which it (or its owners) belongs, let alone

provided allegations sufficient to support the conclusion that any such class would receive

protected status under the statute.  (*Id.*)  Plaintiff therefore has not stated a section 1985(3)

conspiracy claim.  *McDaniel*, 585 F. Supp. 3d at 522 (dismissing claims pursuant to § 1985 when

the complaint included "no factual assertions that would establish the requisite discriminatory

animus"); *see also Berenson v. Biden,* No. 23-CV-3048, 2025 WL 2773968, at *5 (S.D.N.Y.

Sept. 29, 2025) (dismissing Section 1985 claim where the "[p]laintiff ha[d] not plausibly alleged

the existence of, or his belonging to, a recognized protected class under the statute"); *Berenson v.*

*Biden*, 791 F. Supp. 3d 398, 422–24 (S.D.N.Y. 2025) (dismissing § 1985 claim premised on

membership in class of Americans who had chosen not to receive the COVID-19 vaccine, which

allegedly included a disproportionate number of African-Americans, political conservatives, and

evangelical Christians, on the basis that this class was not protected under the statute); *Gilliam v.*

*Greenberg Traurig LLP*, No. 23-CV-6144, 2024 WL 4043348, at *4 (S.D.N.Y. Sept. 4, 2024)

(dismissing Section 1985 claim for failure to allege existence of or belonging to recognized

protected class); *Taranto*, 2023 WL 6318280, at *13 (reasoning in the alternative that the claim

would fail because the plaintiffs did not allege membership in a protected class); *Joyner v. Alston*

*& Bird LLP*, No. 21-CV-8549, 2022 WL 6244417, at *10 (S.D.N.Y. May 13, 2022)

(recommending dismissal of § 1985(3) claim in part because plaintiff had not alleged

"discriminatory animus aimed at depriving her of a federal constitutional right), *report and recommendation adopted*, 2022 WL 4115954 (S.D.N.Y. Sept. 9, 2022); *Dolan*, 794 F.3d at 296 (affirming dismissal of Section 1985(3) claim premised on class of jailhouse lawyers and members of inmate liaison committee on the basis that these classes do not possess "inherited or immutable characteristics sufficient to satisfy the class-based animus requirement").

5. Declaratory Judgment Act

In its Complaint, Plaintiff raises a claim pursuant to the Declaratory Judgment Act. (Compl. ¶¶ 152–58.)  Defendants move to dismiss this claim on the grounds that it is duplicative of Plaintiff's other causes of action.  (*See* Defs.' Mem. 27–28.)  "The Declaratory Judgment Act . . . does not provide an independent private right of action."  *Tomsha v. Gen. Servs. Admin.*, No. 15-CV-7326, 2016 WL 3538380, at *4 (S.D.N.Y. June 21, 2016).  Rather, the "Act is 'procedural only . . . .'"  *Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870, 2024 WL 4817649, at *13 (S.D.N.Y. Nov. 18, 2024) (alteration adopted) (quoting *Chevron Corp v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)).  Accordingly, "[t]o the extent [Plaintiff] asserts declaratory relief as a standalone claim, it is dismissed."  *Id.*

6. Equal Protection

Plaintiff devotes much of its Opposition Brief to the argument that it has "[s]tated [c]laims for [the v]iolation of [the] Equal Protection [Clause] [u]nder the [United States] and [New York State] Constitutions."  (Pl.'s Opp'n 16–19.)  It attempts to state a "class of one" claim."  (*Id.* at 16–17.)  However, no such claims are included in the Complaint—that document includes exclusively claims for due process violations, (Compl. ¶¶ 102–03, 146–51), First Amendment retaliation, (*id.* ¶¶ 128–35), violation of 42 U.S.C. § 1985 (*id.* ¶¶ 136–45), the Declaratory Judgment Act, (*id.* ¶¶ 152–56), and a count seeking Judgment Pursuant to Article 78

of the N.Y. CPLR, (*id.* ¶¶ 159–63).  In the absence of this claim being specifically identified and

alleged in Plaintiff's operative Complaint, the Court will not construe that document to raise

such a claim.  *See Olesen v. Morgan*, No. 06-CV-959, 2008 WL 5157459, at *6 n.10 (N.D.N.Y.

Dec. 8, 2008) ("Plaintiffs' complaint does not specifically mention equal protection except to the

extent it alleges a Fifth Amendment due process violation, which incorporates equal

protection. . . . The Court finds that Plaintiffs did not attempt to assert an equal protection claim

in their complaint.").  The decision to adjudicate a claim omitted from the Complaint on the

merits is discretionary for the Court, and such a claim may be considered if it would not

prejudice either party to do so.  *Richards v. Connecticut Dep't of Corr.*, 349 F. Supp. 2d 278, 291

(D. Conn. 2004) ("A claim may be adjudicated on its merits, even where it has not been pled, so

long as considering the claim will not prejudice either party.  The decision to adjudicate the

unpleaded claim is discretionary." (citation omitted)); *see also* Fed. R. Civ. P. 15(b).  Here, the

failure to plead this claim means that its review would be prejudicial, because its omission did

not provide Defendants with fair warning of the nature of the claims against them.  *See Richards*,

349 F. Supp. 2d at 291 (declining to reach an unpleaded equal protection claim where there had

been "no arguments addressed to that issue" in papers submitted to the court other than the

plaintiff's opposition brief); *Pittman v. City of New York*, No. 14-CV-4140, 2014 WL 7399308,

at *2 (E.D.N.Y. Dec. 30, 2014) ("New legal claims may not be raised for the first time in

opposition to a motion to dismiss if they have not been pled in the complaint.").[21]

---

[21] In the alternative, the Court would conclude that Plaintiff's Complaint fails to "allege that properties sufficiently similar to theirs were treated more favorably by" the Defendants, an omission that would prevent the Court from concluding that the Complaint states a class-of-one claim. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

7. State law claims

Plaintiff also seeks a judgment pursuant to Article 78 of New York's CPLR against all Defendants, and asserts a claim pursuant to the New York State constitution. (Compl. ¶¶ 146–51, 159–63.) "In general, where the federal law claims are dismissed before trial, the state law claims should be dismissed." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). "In considering the traditional values of judicial economy, convenience, fairness, and comity, applying that general rule in this case makes sense." *Golds v. City of New York*, No. 25-CV-03587, 2025 WL 1895233, at *7 (E.D.N.Y. July 8, 2025) (quotation marks omitted). Accordingly, the Court declines to exercise jurisdiction over plaintiff's state law claims. *See Grosse-Rhode v. Rumsey*, No. 22-CV-9343, 2023 WL 2787995, at *3 (S.D.N.Y. Apr. 3, 2023) (dismissing state claims in similar circumstances); *Hoffman v. TD Waterhouse Inv. Servs., Inc.*, 148 F. Supp. 2d 289, 292 (S.D.N.Y. 2001) (same).

## III.  Conclusion

For the reasons set forth above, the Motion to Dismiss is granted.  The Court's dismissal of the Complaint is without prejudice because this is the first adjudication of Plaintiff's claim on the merits.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order. *See Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL 1331913, at *19 (S.D.N.Y. Mar. 25, 2019) ("The Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants." (alteration adopted) (citation omitted)).  There will be no extensions.  Plaintiff is further advised that an amended complaint will completely replace, not supplement, the now-dismissed Complaint.  Any amended complaint must therefore contain

59

*all* of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.

If Plaintiff fails to timely file an amended complaint, the dismissed claims may be dismissed

with prejudice. *See Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 87 (S.D.N.Y. 2024). The

Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 33.

SO ORDERED.

Dated:    March 30, 2026
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

60